Arthur SILVA et al., Plaintiffs,

v.

George ROMNEY, Secretary of the Department of Housing and Urban Development, et al., Defendants.

Civ. A. No. 72–898–M.

United States District Court,
D. Massachusetts.

April 13, 1972.

John D. Leubsdorf, Foley, Hoag & Eliot, Boston, Mass., for plaintiffs.

Joseph L. Tauro, U. S. Atty., Frederic R. Kellogg, Asst. U. S. Atty., Dept. of Justice, Boston, Mass., for defendants.

MEMORANDUM and ORDER

FRANK J. MURRAY, District Judge.

This action came on to be heard on plaintiffs' motion for preliminary relief. The cause of action is alleged under the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 et seq. (hereinaf-

ter NEPA) and the jurisdiction of the court is invoked under 28 U.S.C. §§ 1331, 1361 and 5 U.S.C. § 706.

The complaint alleges briefly that the defendants, officers of the Department of Housing and Urban Development (hereinafter HUD), have failed to comply with the requirement of Section 102(2)(C) of NEPA, 42 U.S.C. § 4332 (2)(C), that an environmental impact study be made by each federal agency undertaking a major federal action having a significant impact on the environment. The alleged federal action in the instant case is a HUD mortgage guarantee in the amount of $4,000,000 and an interest grant of $156,000, for the Forest Glen housing project to be located in Stoughton, Massachusetts. This project is to be located on 11.38 acres of presently undeveloped woodland and will include 138 dwelling units housing between 450 and 475 persons. Evidence shows at least some preliminary construction work has been done at the present time.

A section 102(2)(C) environmental impact statement was not filed in the instant case. Instead, a "Special Environmental Clearance Worksheet" dealing with the Forest Glen project was filed by the Regional Environmental Clearance Officer of HUD pursuant to draft regulations issued by HUD, January 22, 1971.

At the hearing, the questions before the court narrowed to whether this was a project as defined by NEPA and the regulations promulgated pursuant to it requiring a section 102(2)(C) statement, and, if so, whether the statement actually filed in this case is a legally acceptable substitute. Without purporting to decide the case upon the merits, the court has considered the contentions of the parties and their arguments.

Section 102(2)(C) of NEPA does not define "Major Federal Action". Executive Order 11514 of March 5, 1970, 35 Fed.Reg. 4247 (1970), and the Guidelines of the Council on Environmental Quality, published January 28, 1971 and April 23, 1971, respectively 36 Fed.Reg. 1398 and 7724 (1971), have directed the heads of federal agencies to establish formal procedures for identifying those agency actions requiring environmental impact statements.

■ Appendix A of the HUD guidelines issued January 22, 1971 defines "Major HUD Actions Significantly Affecting the Environment", and includes in section 1c:

> *controversial projects:* controversial proposals to HUD with regard to environment (a) which are unique as deviations from (or exceptions to) HUD policy or program guidance standards and which are agreed by the Deputy Under Secretary or his designee to involve such significant environmental consequences as to warrant an environmental statement; or (b) which are deemed by the Secretary or Assistant Secretary, Regional Administrator, Area Office Director, or Insuring Office Director to warrant an Environmental Statement[.]

The regulations provide no guidance as to the definition of "controversial". However, evidence presented to the court showed there is considerable opposition to the project. Evidence was adduced to show disagreement about the drainage facilities which are a part of this project between defendants in this action and owners of abutting property as well as other residents of Stoughton. Such evidence is sufficient to bring the project within the meaning of "controversial" in standard English usage.

Further, in the regulations there is a requirement under which multifamily projects having 100 or more dwelling units under any HUD mortgage insurance programs are considered federal projects for the purpose of determining whether an Environmental Impact Statement must be filed.

The HUD report did consider the "Master Plan for Stoughton, Massachusetts, 1968–1970" prepared by the engineering firm of Metcalf & Eddy. It appears from the Master Plan that the

land use envisaged for the 11.38 acres of the project area is recreational. The HUD report does not show the effects of the project on the recommended uses for the area surrounding the 11.38 acres set forth in the Master Plan; and there was no showing that the informal HUD statement had given consideration to the presence of wildlife or running brooks on the property, or to the effects of the project on these environmental factors. The weight of these factors cannot be evaluated fully until a hearing on the merits.

The question presented is whether the "Special Environmental Clearance Worksheet" can be found to qualify as a legally acceptable substitute for a section 102(2)(C) statement, such that the court cannot find that there is a likelihood plaintiffs can recover after a full hearing on the merits. Defendants have urged the court that flexibility must be permitted in complying with the statute because of the large number of projects which HUD must evaluate with limited manpower resources.

The policy of NEPA as expressed in the preamble to the statute makes the commitment to the protection of the environment the overriding concern, saying:

> The purposes of this chapter are: To declare a national policy which will encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man . . . .

42 U.S.C. § 4321.

The President himself has emphasized protection of the environment in his Executive Order 11514 of March 5, 1970, 35 Fed.Reg. 4247 (1970). He said:

> The Federal Government shall provide leadership in protecting and enhancing the quality of the Nation's environment to sustain and enrich human life. Federal agencies shall initiate measures needed to direct their policies, plans and programs so as to meet national environmental goals.

In addition, at least one court has held that the procedural provisions of NEPA impose strict standards of compliance. Calvert Cliffs' Co-ordinating Committee, Inc. v. AEC, 449 F.2d 1109 (D.C.Cir. 1971).

A government agency is bound by its own regulations. *See* United States v. Heffner, 420 F.2d 809, 811–812 (4th Cir. 1970); NLRB v. Welcome-American Fertilizer Co., 443 F.2d 19 (9th Cir. 1971). Under section 706 of the Administrative Procedure Act, 5 U.S.C. § 706, a reviewing court cannot only determine all relevant questions of law, but can as well set aside agency action committed without observance of procedures required by law.

In light of the policy considerations behind NEPA and the fact that the Forest Glen project appears likely to be found to be a major federal action, as defined by HUD's own guideline, this court cannot say on the present showing that the Special Environmental Clearance Worksheet does satisfy the requirement of section 102(2)(C) of NEPA mandating an environmental impact statement wherever a major federal action is involved.

Accordingly, there appears a reasonable likelihood that plaintiffs will prevail on the merits, that the grant of preliminary relief will not irreparably harm the defendants, and that denial of relief would irreparably harm plaintiffs. It is, therefore, ordered that defendants take no action to aid in the construction of the Forest Glen project pending further order of the court. The court determines in the circumstances that the plaintiffs should not be required to file a penal bond pursuant to Rule 65(c). *See* Powelton Civic Homeowners Assn. v. HUD, 284 F.Supp. 809, 840 (E.D.Pa. 1968).