**CITY OF BOSTON, Plaintiff,**

v.

**William T. COLEMAN, Jr., et al.,
Defendants.**

**Anna DE FRONZO et al.,
Plaintiffs,**

v.

**William T. COLEMAN, Jr., et al.,
Defendants.**

**Civ. A. Nos. 74-1781-S, 74-1798-S.**

United States District Court,
D. Massachusetts.

July 18, 1975.

Peter Koff, Asst. Corp. Counsel, City of Boston, Boston, Mass., for plaintiff.

James N. Gabriel, U. S. Atty., Boston, Mass., Raymond V. Picard, Asst. U.S. Atty., Boston, Mass., for Federal defendants.

John Silas Hopkins III, Oscar M. Shaw, R. K. Gad III, Thomas B. Wheat-

ley, Ropes & Gray, Boston, Mass., Neil L. Lynch, Massachusetts Port Authority, Boston, Mass., for Massachusetts Port Authority.

John D. O'Reilly III, Letoile, Murphy & O'Reilly, Framingham, Mass., for Perini Corp.

### MEMORANDUM AND ORDER

SKINNER, District Judge.

The Memorandum and Order and the Judgment entered in this case on June 23, 1975 are respectively withdrawn and vacated, and the following Memorandum and Order and attached Judgment on Fewer Than All Claims is substituted therefor.

This case is again before the Court on the plaintiffs' new motions under their amended complaint for a preliminary injunction of the approval by the FAA of the 1974 Airport Layout Plan for Logan Airport. The plaintiffs assert that no such approval can legally be given without an Environmental Impact Statement (EIS required by § 102(2)(C) of the National Environmental Protection Act (NEPA), 42 U.S.C. § 4332(2)(C), which covers every project on the proposed plan.

The prior order in this case and the decision of the Court of Appeals in *City of Boston v. Volpe*, 464 F.2d 254 (1 Cir. 1972), are of no assistance, because they dealt with a requested injunction against construction by the non-federal defendant. The issue was whether the particular project had become sufficiently federalized so as to be within the ambit of NEPA. The plaintiffs now seek to enjoin action by the FAA, the federal nature of which is indisputable.

The inquiry may be divided into (1) consideration of the statutory mandate, and (2) consideration of the applicable regulations of the Department of Transportation and of the FAA, by which the FAA must be guided.

With respect to 42 U.S.C. § 4332(2)(C), the question is whether approval of the Airport Layout Plan is major federal action significantly affecting the quality of the human environment.

Approval by the FAA of an Airport Layout Plan is a prerequisite to the grant of funds under the Airport Development Act of 1970. Approval of the Plan does not necessarily lead to approval of funding. The plan includes the long range development program of the airport. Some of the projects shown on the plan may never be built, and some may be built without federal aid.

The Airport Layout Plan is in this respect distinguishable from the Neighborhood Development Programs which were the subject of the Court's opinion in *Dick Jones v. District of Columbia Redevelopment Land Agency*, 162 U.S. App.D.C. 366, 499 F.2d 502. Those programs were completely federal, and were sequential parts of an overall renewal plan which was to be accomplished in successive "action years." They were proposed for immediate and certain accomplishment to the extent that they were approved by the several responsible agencies. The Court held that an EIS must be submitted at the first stage of the progressive approval process.

Even the broad language of that decision does not, in my view, require an agency to undertake the preparation of an EIS for projects which may be built at some indeterminate time in the future, if at all. A significant EIS is no small matter, and should be firmly grounded on a real situation.

A case closer to the mark is *Friends of the Earth, Inc. v. Coleman et al.*, 518 F.2d 323 (9 Cir. 1975). In that case, plaintiffs had sought an injunction of an airport development project which included construction of a terminal and garage without federal funds. The district court judge refused to enjoin the non-federal projects, but entered the following order:

Federal defendants, their officers, agents, servants, employees and all persons in active concert or participa-

tion with them or any of them who receive actual notice of this order, each and all, are hereby restrained from granting, approving, making any tentative allocation of funds or entering into any grant agreement with respect to or in connection with any request for aid, preapplication for aid, or application for aid pursuant to the Airport and Airways Development Act of 1970, 49 U.S.C. Sections 1701 *et seq.*, with respect to or in connection with any San Francisco International Airport development project unless and until such request for aid, preapplication for aid, or application for aid is accompanied by a draft Environmental Impact Statement ("EIS") on the overall development plan of the Airport which complies with the requirements established by law, regulations, and orders for any such draft EIS.[1]

The plaintiffs appealed from the denial of an injunction as to the terminal and garage, but the defendants did not appeal the above quoted order. In the course of affirming the district court's judgment (or more accurately, arriving at the same result for completely different reasons), the Court of Appeals interpreted the quoted order as follows (Slip Opinion, p. 7):

"Its order that a federal project EIS consider 'the total development plan at the airport' is best viewed as an admonition that each project's impact should be evaluated in the context of the whole development scheme [Citation]. As such, the court's directive relates to the type of statement required for projects subject to NEPA, rather than to which will require an EIS initially."

As so viewed, the district court's order is not as helpful to the plaintiffs as one might have at first supposed.

The Court of Appeals then goes on to make the flat statement that "FAA approval of an airport layout plan does not require an EIS," citing *City of Boston v. Volpe*, 464 F.2d 254 (1 Cir. 1972) and my earlier decision in this case, *City of Boston v. Brinegar*, 6 E.R.C. 1961 (D. Mass.1974).

The focus of the *City of Boston* cases was on enjoining construction of projects not yet federally funded, and it is my impression that the present issue was not reached in those cases.

■ Nevertheless, for the reasons stated in the seventh paragraph of this Memorandum, I am of the opinion that the conclusion is correct for the period before the adoption of Order 5050.2A by the FAA on February 24, 1975 (Exhibit 172). (This order was promulgated under the authority of Section 4 of DOT Order 5610.1B, and may be considered an authoritative interpretation thereof.)

■ I am informed that a petition for rehearing has been filed by the plaintiffs in *Friends of the Earth, Inc.* on the ground that the Court did not consider FAA Order 5050.2A. It apparently did not. It is, of course, necessary to do so because the FAA is bound by its own rules. *Silva v. Romney*, 342 F. Supp. 783, 785 (D.Mass.1972). While I would prefer to wait for guidance from the Ninth Circuit, the parties are entitled to as prompt a decision as is possible.

Paragraph 32 of this Order deals with the application of NEPA to Airport Layout Plans, and declares that approval of such a plan is an "action" within the meaning of 42 U.S.C. § 4332(2)(C). Whether this is "major federal action having a significant impact on the environment," requiring an EIS under paragraph 20 of the Order, or is "action" requiring a negative declaration under paragraph 22, "depends upon the consequences flowing from FAA's approval of the plan."

Subsection b of paragraph 32 provides that "If the proposed airport develop-

---

1. This does not appear to be a published opinion, and is included only for the purpose of illuminating the opinion of the Court of Appeals. The full district court opinion was submitted as an attachment to the plaintiffs' brief and was served on the other parties.

ment shown on the plan would require environmental processing pursuant to paragraphs 20 or 22 of this order and if such processing has not been completed, the plan may be given only a conditional approval." A form of conditional approval is provided (as amended April 21, 1975, Exhibit 173).[2] Subsection c provides that if part of the proposed development has received environmental approval, that fact may be noted on the plan.

The major changes in Logan Airport projected by the 1974 Airport Layout Plan are the extentions of Runways 9 and 4L and creation of a new STOL/GA Runway 15–33. These portions of the plan have been covered by an EIS filed February 15, 1975 (Exhibit 167). The Airport Layout Plan contains other proposed changes listed on Exhibit 1 attached to Exhibit 167. Some of these other changes require at least the environmental impact assessment report required by paragraph 22. No such assessment report has been made.

Under these circumstances, paragraph 32 requires that the approval be conditional, with the added notation that the runway extensions and creation of the STOL/GA runway have received environmental approval.

The plaintiffs also complain that the Airport Layout Plan was submitted without a report suggested by FAA Advisory Circular 150/5070-6 (Exhibit 42), paragraph 57. This is not a strict requirement. Evidence presented in the prior hearings in this case in June and July 1974, established that the data to be included in such a report had in fact been developed in close cooperation with the FAA, and that all of this material was on file. The failure to file a separate report is not significant under these circumstances.

▉ Accordingly, the 1970 Airport Layout Plan was properly approved under the rules applicable at the time. Approval of the 1974 Airport Layout Plan must be enjoined unless it is conditional. Such conditional approval may contain the notation that the extension of Runways 9 and 4L has received environmental approval.

It was agreed among the parties that the hearing on the motion for a preliminary injunction might be consolidated with the hearing on the merits under Rule 65A as to those issues.

There is no just reason for delay in the entry of a final judgment on the issue of approval of the Airport Layout Plan, and I direct that such judgment issue in accordance with the foregoing, pursuant to Fed.R.Civ.P. 54(b).

So ordered.

## APPENDIX A

The approval indicated by my signature is given subject to the condition, to which the sponsor of the airport agrees by his acceptance of the statement of approval, that (1) any proposed airport development depicted in the plan may not be taken without the prior written approval of FAA, and that (2) the prior written approval will be deemed to be a Federal action subject to the requirements of the National Environmental Policy Act of 1969.

APPROVED _____     (signed) _____
       Date     (Title of FAA approving Official)

ACCEPTED _____     _____
       Date     (Title of sponsor's Accepting official)

2. FAA Change Order (5050.2A CHG 1) dated April 21, 1975. See Appndix A.