**Guilliaem AERTSEN et al, Plaintiffs,**

v.

**Patricia R. HARRIS, Secretary of Housing and Urban Development, et al, Defendants.**

**Civ. A. No. 78–3271–C.**

United States District Court, D. Massachusetts.

March 27, 1979.

---

Thomas B. Bracken, Bracken, Selig & Baram, Boston, Mass., for plaintiffs.

Carolyn S. Grace, Asst. U. S. Atty., Boston, Mass., for defendants.

Harold J. Carroll, Gen. Counsel, Boston Redevelopment Authority, Boston, Mass., for Robert J. Ryan.

## OPINION

CAFFREY, Chief Judge.

This is a civil action in which plaintiffs seek a preliminary injunction to enjoin demolition of existing structures, new construction and certain other actions in connection with a proposed federally-subsidized housing project, Viviendas La Victoria II (La Victoria II), planned to be built on a site which is part of the South End Urban Renewal Area of Boston. Plaintiff Committee for an Open Review Process is a multiracial group of residents in the South End concerned with the proper development of their neighborhood. The individual plaintiffs are also residents of the South End. The federal defendant is Patricia R. Harris, Secretary of the Department of Housing and Urban Development (HUD), the source of federal financial assistance. The defendant Robert Ryan is Director of the Boston Redevelopment Authority (BRA), the municipal agency in charge of the South End Urban Renewal Project.

As grounds for their action, plaintiffs allege violations of the National Environmental Policy Act (NEPA), 42 U.S.C.A. § 4321; the Housing and Community Development Act, 42 U.S.C.A. § 1437f; Executive Order 12074; the National Historic Preservation Act (NHPA), 16 U.S.C.A. § 470; and the Massachusetts Environmental Policy Act (MEPA), Mass.Gen.Laws ch. 30, § 62.

Pursuant to Fed.R.Civ.P. 65(a)(2), the Court ordered that the hearing on the merits be consolidated with an evidentiary hearing on plaintiffs' application for preliminary relief. The Court limited the scope of that hearing to whether HUD and BRA are acting in partnership with respect to La Victoria II so as to require HUD to consider in its applicable NEPA statement the actions of BRA as well as those of HUD. After hearing and upon consideration of evidence presented at that hearing, the agreed statement of facts, and the post-trial memoranda of the parties, I find the following facts are not in substantial dispute.

In 1965, the BRA adopted the South End Urban Renewal Plan (Plan), which includes Reuse Parcel Nos. 19A, 19B, 19C, PB–6, PB–7, PB–8, PB–11, R–6, R–6A and P–16, consisting of about 34 acres bounded generally by Tremont, Upton, Washington and West Newton Streets. The Plan, which has as its objective the rehabilitation of the area on an integrated basis both racially and economically, provides for clearance and redevelopment activities which include acquisition, clearance, and redevelopment by the BRA of specified parcels within the South End Urban Renewal Area, including those parcels designated at PB–6, PB–8, 19B, R–6, R–6A and P–16. In August, 1966 HUD approved the Plan by executing a Loan and Capital Grant Contract with the BRA.

In 1969, BRA tentatively designated ETC Development Corp., which is a business corporate affiliate of Inquilinos Boricuas en Accion, Inc. (IBA) (formerly Emergency Tenants Council of Parcel 19, Inc.) as the developer of Parcel 19, a development area designated by BRA. *Chick v. Hills*, 528 F.2d 445, 447 (1st Cir. 1976). IBA is a non-profit, principally Hispanic community development corporation established in 1968 with the purpose of providing housing for low-income groups in the South End who would otherwise have been displaced by the Plan. ETC's overall plan called for a residence for the elderly, two rehabilitation projects and two housing projects for low- and middle-income families on land acquired from BRA.

Pursuant to the Plan and Contract, HUD has provided financial assistance to BRA for clearance and redevelopment. HUD has also provided financial assistance to ETC for the construction and rehabilitation of approximately 489 housing units, consisting of construction of a 201-unit high-rise residence for the elderly, known as "Unidad Torres;" rehabilitation of 71 housing units on Tremont Street; rehabilitation of 36 housing units, known as "Casas Boriquen;" and construction of 181 family housing units, known as "Viviendas La Victoria I." La Victoria II is the last portion of this five-phase, federally-financed redevelopment effort within Boston's South End.

La Victoria II is to be a 207-unit housing project built by ETC with financial assistance from HUD and on land acquired and provided by BRA. It is sited principally on PB–8 and 19–B, between West Newton and West Brookline Street on the west side of La Victoria I, and on R–6, R–6A, and PB–6, on West Dedham Street on the east side of La Victoria I and Unidad Torres. Construction of La Victoria II requires demolition of fifteen buildings as provided for in the 1966 contract between HUD and BRA. Eight of the buildings scheduled for demolition are a group of brick Victorian buildings located on PB–8 which is within the South End Historic District, listed on May 8, 1973 in the National Register of Historic Places.

The development of Victoria II commenced on June 15, 1977. On that date, ETC submitted to HUD a preliminary proposal for an allocation of housing subsidy funds in response to Notification of Fund Availability, No. MA 06–0003, April, 1977. As part of HUD's consideration of that proposal, HUD prepared a Special Environmental Clearance (SEC) pursuant to its regulations. That SEC concluded that "it is not expected that the construction of Phase II of Viviendas La Victoria will have a significant impact on the South End nor change the community structure." On that basis, HUD approved ETC's preliminary proposal on August 3, 1978 and reserved $1,444,596 in annual rental subsidy contributions for La Victoria II. HUD has expressly made that approval subject to several conditions, e. g., because a portion of the site for La Victoria II lies within the South End Historic District, a Section 106 Historic Review of La Victoria II has been required by HUD. A Section 106 Historic Review of La Victoria II has not been completed as of this date. As a result of that preliminary approval, ETC applied in November, 1978 to HUD for project mortgage insurance to enable ETC to obtain financing for La Victoria II at an estimated construction cost of $8,445,000.

On November 30, 1978 the Board of Directors of the BRA authorized the advertisement for a demolition and site clearance contract relative to the 15 buildings existing on the site for La Victoria II. On December 19, 1978 BRA publicly advertised for bids to be received by January 10, 1979 for demolition of the existing buildings.

On December 21, 1978, plaintiffs brought this action and sought to enjoin HUD from taking further action in connection with the proposed housing project and to enjoin BRA from taking any action which would cause the demolition of the buildings currently standing on the proposed project site.

Plaintiffs contend that some of the buildings scheduled for demolition have historical and architectural significance. They contend that the proposed actions for La Victoria II, namely, demolition and con-

struction, are being undertaken pursuant to a partnership between BRA and HUD in furtherance of the Plan and that these actions are so integrally related so as to constitute, in combination, major federal action for which HUD is required by NEPA to prepare an Environmental Impact Statement (EIS), which considers both demolition and construction. The Court views plaintiffs' claimed entitlement to injunctive relief as predicated upon HUD's failure to consider the impact on the environment which could be caused by BRA's proposed demolition in the appropriate NEPA statement.

HUD concedes that the construction of La Victoria II is a federally-funded project over which HUD maintains sufficient control to require a NEPA statement under the rule established in *Jones v. Lynn*, 477 F.2d 885, 890 (1st Cir. 1973). HUD claims, however, that the demolition is a separate BRA action for which HUD is not required to prepare a NEPA statement.

In making that contention, HUD overlooks the fact that the proposed demolition is undeniably an important segment of a much larger governmental undertaking. *See, e. g., Save the Courthouse v. Lynn*, 408 F.Supp. 1323, 1340 (S.D.N.Y.1975); *Boston Waterfront Residents Association Inc. v. Romney*, 343 F.Supp. 89 (D.Mass.1972). The planned demolition is part of an on-going urban renewal plan, implementation of which began in 1966 through the combined efforts of HUD and BRA. As a result of HUD funds made available to BRA under the contract, BRA began to redevelop Parcel 19 as part of its South End Redevelopment effort and designated ETC as the developer of that parcel. Thereafter, HUD, BRA and ETC acted jointly developing housing in the South End Urban Renewal Area.

Although approval of clearance and development on the site involved in this case occurred in 1966, HUD and BRA did not take any action in furtherance of developing that site until 1977 when HUD approved ETC's proposed construction of La Victoria II and reserved rental subsidies for that project and BRA made its commitment to La Victoria II by authorizing demolition and clearance of the fifteen buildings on the proposed site. BRA's clearance of the property clearly facilitates the construction of La Victoria II, which will bring to a close the five-phase, federally-financed redevelopment effort undertaken by HUD, BRA and ETC within Boston's South End. Accordingly, the Court views BRA's demolition and transfer of property to ETC and ETC's building La Victoria II with financial assistance from HUD as one segment of a larger project, the South End Urban Renewal Plan.

BRA's proposed demolition is an indispensable part of the larger project in which both HUD and BRA have been acting jointly and in which both remain meaningfully involved. HUD cannot meet its statutory responsibility by ignoring demolition and other site clearance work performed by one clearly acting in partnership with the federal government nor can it shut its eyes to the demolition activity and look only to the environmental consequences of new construction which Hud is financing. HUD must consider all aspects of the plan which have not yet been completed, *Jones v. Lynn, supra* at 889, at a time when there is still time and opportunity for consideration of alternatives, *Boston Waterfront Residents Association, Inc. v. Romney, supra* at 91.

In enacting NEPA, Congress referred to the environmental role for a federal agency as the:

"continuing responsibility" of the federal government to "use all practical means . . . to improve and coordinate Federal plans, functions, programs and resources", 42 U.S.C. § 4331, and to act "to the fullest extent possible", 42 U.S.C. § 4332, to carry out the policies of the act. And the "major Federal actions", 42 U.S.C. § 4332(2)(C), proposals for which necessitate careful environmental review, include, in the words of the overseeing Council on Environmental Quality, "projects and continuing activities . . supported in whole or in part through Federal contracts, grants, subsidies, loans,

or other forms of funding assistance". 36 Fed.Reg. 7724, § 5(a)(ii) (April 23, 1972). *Jones v. Lynn, supra.* The South End Urban Renewal Plan presents just such a continuing project in which the federal government is and will be substantially involved and for which the federal government has continuing responsibility for the coordination of all aspects of that plan which have not yet been completed. Accordingly, I rule that all actions BRA and HUD propose to take in furtherance of that Plan are subject to NEPA.

I turn next to the requirements of NEPA. 42 U.S.C.A. § 4332(2)(C) requires that an Environmental Impact Statement be prepared in all "major Federal actions significantly affecting the quality of the human environment." The EIS shall consider, among other factors, alternatives to the proposed action. 42 U.S.C.A. § 4332(2)(C)(iii).

Each agency is charged with establishing standards and criteria for determining which of its activities are to be considered major federal actions significantly affecting the quality of the human environment. In 1973 HUD published a handbook to assist in the implementation of Section 4332(2)(C). Under the provisions of the handbook an SEC must be prepared by HUD on all housing developments of more than 200 units for which housing subsidy funds have been requested. According to HUD guidelines, an SEC is a preliminary version of an EIS. The function of an SEC is to determine whether the proposed action should be approved, rejected or modified, or whether the more in-depth analysis of an EIS is required. Further analysis is required if the proposed agency action is determined to be a "major federal action significantly affecting the quality of the human environment." 39 F.R. 38923, November 4, 1974.

The handbook also requires an SEC in cases where property listed on the National Register of Historical Places will be affected by the agency action. 38 F.R. 19185, July 18, 1973.

HUD has prepared an SEC which concludes that La Victoria II is not a major federal action which will significantly affect the human environment. However, HUD concedes that in its SEC it has considered the affect of the proposed agency action on the human environment in terms of the proposed construction without ever considering the affect of the demolition which must occur before that construction can take place. Furthermore, HUD's Section 106 Historic Review condition is predicated on a concern of whether the design of the new construction blends asthetically with the South End Historic District and not whether the construction will impact on existing buildings which may have architectural or historical significance. Accordingly, HUD is ordered to broaden the scope of its SEC to include consideration of the impact of BRA's clearance of the proposed site for La Victoria II.

In so ruling, I make no determination of the historic value of the buildings in question but note that demolition is irrevocable and an action which once taken would preclude consideration of alternative plans, which might include preservation and rehabilitation.

This ruling is not inconsistent with the analysis in *Chick v. Hills, supra,* because in *Chick v. Hills* the issue was not a determination of the parameters of La Victoria I for NEPA review but rather whether the relevant project for NEPA review was La Victoria I or all of Parcel 19. There, plaintiffs contended that HUD must prepare an environmental review of all of Parcel 19 since ETC's plan for Parcel 19 called for more than 500 housing units, the point at which HUD's regulations require an EIS as opposed to an SEC. The Court of Appeals sustained the District Court's findings that HUD did not recognize Parcel 19 as a redevelopment unit and that there existed no present expectation of any future construction on Parcel 19. The Court noted that an SEC was the appropriate environmental review for La Victoria I. *Chick v. Hills, supra* at 447 n.2.

It is well established in this Circuit that "once the partnership stage has been reached between the federal and non-feder-

al entities, all parties in a project are subject to injunctive processes." *Silva v. Romney*, 473 F.2d 287, 290 n.5 (1973). Accordingly, an Order should be entered enjoining BRA from demolishing the buildings now standing on the proposed site of La Victoria II pending completion of the Special Environmental Clearance and pending further order of this Court.

Order accordingly.