Joshua E. GREENSPON et al.

v.

FEDERAL HIGHWAY ADMINISTRA-TION et al.

Civ. No. Y–79–2026.

United States District Court,
D. Maryland.

May 7, 1980.

Phillip M. Sutley, Baltimore, Md., for plaintiffs; Robert C. McCandless, Washington, D. C., of counsel.

Edward M. Norton, Jr., Asst. U. S. Atty., Baltimore, Md., for defendant Federal Highway Administration.

Richard C. Keene, Baltimore, Md., for defendant Baltimore and Ohio R. Co.

Nolan H. Rogers, Baltimore, Md., and Charles S. Rhyne, Washington, D. C., James R. Avnet, Sp. Counsel, Baltimore, Md., for defendant William Hellman.

Benjamin L. Brown, Baltimore, Md., and Charles S. Rhyne, Washington, D. C., for defendant Mayor and City Council of Baltimore.

JOSEPH H. YOUNG, District Judge.

The plaintiffs own property sought by the Baltimore & Ohio Railroad (B & O) for relocation of facilities to be displaced by construction of Interstate 95 (I–95) in Baltimore. They have sued B & O, the Federal Highway Administration (FHWA) and William Hellman, in his capacity as Chief of

the Interstate Division for Baltimore City, claiming violations of federal environmental laws and regulations. The Court granted a motion by the Mayor and City Council of Baltimore to intervene as defendants.

The case is now before the Court on a motion to dismiss and/or for summary judgment by the government defendants.[1] Additionally, the plaintiffs have treated the answers filed by Hellman and B & O as motions to dismiss because various legal authorities were cited in support of the defenses raised. Accordingly, the plaintiffs have filed an opposition to these defenses as grounds for dismissal. None of the defendants have objected to the characterization of the answers as motions to dismiss. Therefore, the Court will treat them as such, and will consider the legal issues raised in the answers as well as those raised in the motion to dismiss and/or for summary judgment filed by the government defendants.

*ALLEGED FACTS*

The plaintiffs' claims relate to a 4.2 mile segment of I–95 located in Baltimore City in an area known as Locust Point. Construction of this segment will require B & O to relocate certain service facilities to private property, including property at 921–979 East Fort Avenue owned by the plaintiffs. This property consists of several small factories and a parking lot.

An Environmental Impact Statement (EIS) discussing the segment was released by the Interstate Division and FHWA on May 31, 1976. The EIS discussed the problem of B & O's relocation, but assumed that the relocation would be to other property in another area. There was no discussion of the environmental impact of the relocation on the neighborhood in which the plaintiffs' property is located. Hearings on the segment were held in Locust Point on December 10, 1974, but again, there was no discussion of the relocation as presently planned. According to the complaint, the relocation plans were substantially revised in late 1977, but no further hearings have been held, and no further EIS has been issued.

Four violations of federal laws and regulations are alleged by the plaintiffs. Count I claims a violation of § 102(C) of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332(2)(C), in not considering the present relocation plans in the EIS. Count II alleges that the failure to hold separate design and corridor hearings and the failure to hold a hearing on the relocation violated the Federal Highways Act, 23 U.S.C. § 128, and 23 CFR 790.5. In Count III, it is alleged that the EIS issued violated 42 U.S.C. § 4332 because it was prepared by the Interstate Division, and not a state agency with statewide jurisdiction and responsibility. Finally, it is alleged in the last count that every decision by FHWA to permit the new relocation in violation of various laws and regulations was "arbitrary, capricious and an abuse of its discretion."

For relief, the plaintiffs seek a finding by the Court that the alleged facts do in fact constitute violations of the various laws and regulations referred to, and an injunction against further implementation of the present plans, including acquisition of property, until a new EIS is prepared and new hearings are held.

*MOTIONS TO DISMISS AND/OR FOR SUMMARY JUDGMENT*

The defendants have made a variety of arguments in support of these motions. A number of their contentions may be disposed of quite briefly.

■ First, there is no merit to the defendants' argument that the plaintiffs have no standing to raise any of their claims. The Supreme Court has held that the issue of standing should be determined in accordance with a two-part test. "The first question is whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise." *Data Processing Service v. Camp*, 397 U.S. 150, 152,

---

1. In most respects, the motion is one seeking dismissal. The defendants have submitted two documents relating to the relationship of B & O to the government defendants, however, and they recognize that if the Court relies on these matters outside the pleadings, the motion must be considered a motion for summary judgment. Fed.R.Civ.Proc. 12(b).

90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). This part of the test has been refined as follows:

A plaintiff must allege that he has or will in fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agency's action. And it is equally clear that the allegations must be true and capable of proof at trial.

United States v. SCRAP, 412 U.S. 669, 688–689, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973). This part of the test has been met. Plaintiffs have alleged not only that their property will be taken under the present plans, but also that the relocation would have adverse environmental effects (noise, air and water pollution, and traffic congestion) on their remaining property and on the neighborhood. (Complaint ¶ 17).

The second question is "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Data Processing Service v. Camp, supra, 397 U.S. at 153, 90 S.Ct. at 830. The Court was careful to distinguish this question from the issue of whether the plaintiff has a "legal interest," stating that the latter issue went to the merits, unlike the issue of standing. Id. It is clear that the allegations of environmental harm made by the plaintiffs are within the "zone of interests" protected by NEPA. See 42 U.S.C. § 4331.

Having alleged environmental interests protected under NEPA, the plaintiffs' standing is not removed by the fact of their economic interest in the matter. As one court stated:

Certainly an allegation of injury to monetary interest alone may not bring a party within the zone of environmental interests as contemplated by NEPA for purposes of standing. But a party is not precluded from asserting cognizable injury to environmental values because his "real" or "obvious" interest may be viewed as monetary. It is established in

this circuit that a party is not "disqualif[ied]" from asserting a legal claim under NEPA because the "impetus" behind the NEPA claim may be economic. Maryland-National Cap. Pk. & Pl. Comm'n v. U. S. Postal Service, [487 F.2d 1029 (D.C.Cir.1973)]. And it surely does not square with the broad Congressional purpose of NEPA of assuring that environmental values would be adequately and pervasively considered in federal decision-making for private parties who may not be "pure of heart" to be excluded from vindicating the Act.

Realty Income Trust v. Eckerd, 564 F.2d 447, 452–453 (D.C.Cir.1977); see also Hiatt Grain & Feed, Inc. v. Bergland, 446 F.Supp. 457, 469 (D.Kan.1978), aff'd, 602 F.2d 929 (10th Cir. 1979), cert. denied, —— U.S. ——, 100 S.Ct. 1019, 62 L.Ed.2d 755 (1980); National Helium Corporation v. Morton, 455 F.2d 650, 655 (10th Cir. 1971); Robinson v. Knebel, 550 F.2d 422, 425 (8th Cir. 1977) (pecuniary interest an appropriate motivation as long as "their environmental concerns are not so insignificant that they ought to be disregarded altogether.").

■ Similarly, the argument that plaintiffs are merely anticipating a state eminent domain proceeding must be rejected. If NEPA has in fact been violated, state eminent domain proceedings should not take place. It is clearly appropriate for the federal court to determine first whether NEPA has been violated.

■ Finally, there is no merit to defendants' arguments that the plaintiffs' claims are barred by laches or failure to exhaust remedies. The sole basis for this argument is the plaintiffs' admitted failure to participate in the hearings held in 1974. The plaintiffs have alleged, however, that they had no knowledge at that time that their property would be involved in the relocation, and further, that the present plans were not made until 1977. Accordingly, from the facts alleged, they cannot be said to have ignored their rights for an excessive period of time, or to have failed to participate in administrative proceedings in which they could have raised their objections.

Nor do any of the supporting documents filed by defendants in support of their summary judgment motion provide any basis for a laches or exhaustion defense. Accordingly, the motion to dismiss or in the alternative, for summary judgment must be denied on these grounds.

## PREPARATION OF EIS BY INTERSTATE DIVISION

██ The plaintiffs have alleged in one count that the EIS violated NEPA because it was prepared by the Interstate Division of Baltimore City. It is alleged that the Interstate Division is a joint city-state agency which has jurisdiction only in Baltimore City. This is said to be in violation of 42 U.S.C. § 4332(2)(D), which requires that any federal delegation of EIS preparation be to a state agency or official with statewide jurisdiction.

An initial problem is interpreting 42 U.S.C. § 4332(2)(D). § 4332(2)(C) requires that federal agencies prepare an EIS on "major Federal actions significantly affecting the quality of the human environment." § 4332(2)(D) then sets forth the following limits on delegation of EIS preparation duties to state agencies or officials:

(D) *Any detailed statement required under subparagraph (C) after January 1, 1970, for any major Federal action funded under a program of grants to States shall not be deemed to be legally insufficient solely by reason of having been prepared by a State agency or official, if:*

(i) *the State agency or official has statewide jurisdiction and has the responsibility for such action,*

(ii) *the responsible Federal official furnishes guidance and participates in such preparation,*

(iii) *the responsible Federal official independently evaluates such statement prior to its approval and adoption, and*

(iv) *after January 1, 1976, the responsible Federal official provides early notification to, and solicits the views of,*

any other State or any Federal land management entity of any action or any alternative thereto which may have significant impacts upon such State or affected Federal land management entity and, if there is any disagreement on such impacts, prepares a written assessment of such impacts and views for incorporation into such detailed statement.

The procedures in this subparagraph shall not relieve the Federal official of his responsibilities for the scope, objectivity, and content of the entire statement or of any other responsibility under this chapter; *and further, this subparagraph does not affect the legal sufficiency of statements prepared by State agencies with less than statewide jurisdiction.*

(Emphasis added).

The plaintiffs rely on this subparagraph in challenging the EIS, and the first part of the subparagraph in fact supports their contention that the EIS must be prepared by an agency with statewide jurisdiction. The last clause, however, directly contradicts the earlier portion of the subparagraph, apparently negating the requirement. After extensive research, the Court has located no cases in which this contradiction has been resolved. Accordingly, the Court takes this opportunity to do so.

Subsection (D) was added by Congress in 1975 to the National Environmental Policy Act of 1969. P.L. 94–83. The legislation was in response to various court decisions dealing with the extent of permissible delegation of EIS preparation duties to state agencies; most of these cases had arisen in the context of federally-funded highway projects. *See, e. g., Conservation Society of Southern Vermont v. Secretary of Transportation*, 508 F.2d 927 (2nd Cir. 1974), *vac. and rem.*, 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975). Congress responded by enacting legislation clarifying the extent to which delegation was allowed.[2]

---

**2.** In the view of Congress, the purpose of the bill was to "enact existing law," not change the

law. Senate Report 94–152, U.S.Code Cong. & Admin.News 1975, at 866.

The bill initially passed by the House of Representatives, H.R. 3130, would have added the following section as subsection (B) to § 4332:

> (b) A statement prepared after January 1, 1970, shall not be deemed to be legally insufficient solely by reason of having been prepared by a State agency or official if the responsible Federal official furnishes guidance and participates in such preparation and independently evaluates such statement prior to its approval and adoption. This procedure shall not relieve the Federal official of his responsibilities for the scope, objectivity, and content of the statement, nor of any other responsibilities under this Act.

Senate Report 94–152, U.S.Code Cong. & Admin.News 1975, at 863. When the Senate Committee on the Interior and Insular Affairs considered H.R. 3130, it understood the bill to have limited application:

> H.R. 3130 is designed to affect one kind of agency action only. That action, most typical of the Federal Highway Administration, involves the granting of massive federal funding to a *statewide* agency, with a relatively minor substantive federal involvement. Licensing agencies and other regulatory agencies, as well as agencies lacking statewide jurisdiction, are, by their nature, excluded from the scope of H.R. 3130. (emphasis in original).

*Id.* at 866. Thus it was understood that the amendment would not apply to grant-receiving state agencies which lacked statewide jurisdiction. Exactly what sort of delegation was allowed for such agencies was not made clear, but apparently no problems of judicial interpretation had arisen except with respect to the statewide agencies described above.

The language of the proposed amendment passed by the House was hardly clear by its own terms that its application was limited. Most likely, this is the reason that the Senate Committee amended the bill to include the following more specific language:

> "[A] statement prepared after January 1, 1970, *on a major Federal action funded under a program of grants to states . . by a state agency or official which or who has statewide jurisdiction and has the principal planning and decisionmaking responsibility for such action . . . .*"

*Id.* at 867.

Statements made to the Senate Committee by federal officials also indicates a view that the application of H.R. 3130 was to be limited. Russell W. Peterson, Chairman of the Council on Environmental Quality (CEQ), told the Committee: "I should point out that both the House Committee Report and CEQ agree that H.R. 3130 should be limited to grant recipients which are state government agencies operating throughout the state." *Id.* at 873. Norbert T. Tiemann, Administrator of FHWA, took the same position, but thought that the House wording "State agency or official" was ambiguous, and might be interpreted to include local and regional authorities as well as statewide agencies. "In order to resolve this potential ambiguity and avoid litigation over the issue," he stated, "we suggest that the report specifically mention that the bill is not intended to cover the issue of local officials and agencies." *Id.* at 877.

The Conference Committee re-organized the bill and made a few changes. It agreed that the application of the bill should be limited to the types of agencies already discussed. For reasons not apparent, this limited application was not made clear in the final version. The new subparagraph was clear that delegation was proper only when the EIS was delegated to an agency or official with statewide jurisdiction; it was not clear from the language that this requirement applied only when the grant recipient was a statewide agency. There was concern that this new provision might be seen to require participation by a statewide agency even when the grant recipient was not a statewide agency; it was for this reason that the final contradictory clause was added. Following are the relevant portions of the Conference Committee report:

The Senate amendment modified "State agency or official" by adding thereafter "which or who has statewide jurisdiction and has the principal planning and decisionmaking responsibility for such action". This change, together with the Federal grant program limitation inserted by the Senate amendment, would have limited, by statutory language, the application of H.R. 3130 to the very small number of Federal grant programs and recipients, principally the Federal-aid highway program and State highway agencies, which were discussed during the hearings on H.R. 3130. The Senate amendment addressed only Federal grant programs (i) in which the major planning or decisionmaking is done by the recipient State agency or official, not programs in which the agency or official simply spends the money in accordance with decisions made principally by the Federal agency or transfers the funds to other public entities which, in fact, have the principal planning and decisionmaking responsibilities, and (ii) in which that agency or official has the requisite jurisdiction to prepare the analysis required in the EIS.

The conference committee agreed that the application of H.R. 3130 should be limited. The question was raised, however, as to whether such a limitation on H.R. 3130's applicability could be interpreted in any subsequent judicial decision as a statement of congressional intent to either deny or affirm the validity of the delegation of EIS preparation responsibilities to State agencies of less than statewide jurisdiction which are Federal grant recipients. To remove the possibility that any such inference could be drawn, the conference committee agreed to the following language: "(T)his subparagraph does not affect the legal sufficiency of statements prepared by State agencies with less than statewide jurisdiction." The purpose of this language is to provide a clear statement that the conference report does not establish or negate the legal sufficiency of the delegation of EIS preparation responsibilities in instances other than those to which the conference report applies.

House Conference Report 94–388, U.S.Code Cong. & Admin.News, 1975, at 879, 880.

In sum, the Court interprets 42 U.S.C. § 4332(2)(D) to apply only where massive federal grants to statewide agencies are involved, with relatively minor federal involvement. A prime example is a federal highway grant. When such a program is involved, the federal agency may delegate the preparation of the EIS to state agencies or officials, as long as the conditions set forth in subparagraph (D) are met. These conditions include the requirement that the preparation be delegated to a "State agency or official [which] has statewide jurisdiction and has the responsibility for such action." This condition, and the entire provision, do not apply when the grant-receiving state agency does not have statewide jurisdiction. A consideration of the requirements that must be met when there is delegation to a grant-receiving agency with less than statewide jurisdiction is not before the Court at this time.

Under this interpretation of the statute, it is clear that plaintiffs have alleged a violation. The only argument made against this claim by the defendants is that the delegation procedure employed was approved by this District Court in *Movement Against Destruction v. Volpe*, 361 F.Supp. 1360, 1393 (D.Md. 1973), *aff'd*, 500 F.2d 29 (4th Cir. 1974). That case was decided before the provision in question was added to NEPA and has no bearing on the present claim.

Plaintiffs of course will have to establish not only that this violation occurred, but also that the violation has caused, or will cause, injury to them. In other words, this claim can be established, only if it can be shown that the EIS (regardless of who prepared it) should have discussed the present relocation plans. That contention is really the heart of the plaintiffs' complaint, along with the claim that the hearings were inadequate for failure to cover the relocation plans.

*EIS AND PUBLIC HEARINGS*

■ The defendants have made a number of arguments in support of their view that the EIS need not include discussion of the present relocation plans. One such argument is that the EIS did not have to include the plans, regardless of who was responsible for them, because the relocation was not a secondary consequence required to be covered under NEPA. The FHWA regulations relating to preparation of the EIS require a statement for actions "in which the overall cumulative primary and secondary consequences significantly alter the quality of the human environment . . . ." 23 CFR 771.3(d). The defendants contend that this provision was merely intended to implement the CEQ guidelines or EIS preparation, and that those guidelines require analysis of only cumulative and aggregate secondary consequences, not specific effects such as the relocation in question.

Such a conclusion is not justified by the language of the CEQ guidelines. Those guidelines include the following requirement:

> Secondary or indirect, as well as primary or direct, consequences for the environment should be included in the analysis. Many major Federal actions, in particular those that involve the construction or licensing of infrastructure investments (*e. g.*, highways, airports, sewer systems, water resources projects, etc.), stimulate or induce secondary effects in the form of associated investments and changed patterns of social and economic activities. Such secondary effects, through their impacts on existing community facilities and activities, through inducing new facilities and activities, or through changes in natural conditions, may often be even more substantial than the primary effects of the original action itself.

40 CFR 1500.8(a)(3)(ii). Though the emphasis is on aggregate effects ("changed patterns of social and economic activities"), the regulation also mentions more specific impacts ("new facilities and activities"). The objectives of the guidelines and NEPA would be thwarted by an interpretation that discussion of specific secondary impacts was *never* required. Whether such discussion was required in this case depends upon the extent of federal knowledge of and involvement in the relocation plans.

■ This brings up the primary argument made by the defendants—that the relocation decision was an independent choice by B & O, and can in no way be attributed to FHWA. The complaint does not allege that the government defendants in any way selected the property in question. It is alleged, however, that the relocation was a foreseeable consequence of the highway project, and that the present relocation plans were approved by the government defendants, including FHWA. Additionally, B & O will be reimbursed by federal funds for the expenses of relocation, under a special provision dealing with displacement of utilities and railroads by federally funded highway projects. 23 CFR 710.304(i).

In support of their motion for summary judgment, the defendants have submitted two documents relating to the relocation. The first is an agreement between the City and B & O as to the respective rights and responsibilities of the two parties in relocating the B & O facilities. 23 CFR 646.216(d) requires such an agreement, and sets forth some of the matters to be included. While the agreement leaves the choice of a new location to B & O plaintiffs point out that the agreement requires extensive city involvement in all other phases of the relocation. For example, the city must prepare plans for the relocation, approve the purchase price and other costs of the project, reimburse the railroad, and provide labor, equipment and materials. While the railroad has its own power of eminent domain under state law, Ann.Code of Md., Art. 23, § 193, the city also agreed to condemn the railroad's property first, to give B & O "reason and necessity" to exercise its own condemnation power. The second document is a letter from B & O to defendant Hellman explaining the difficulties B & O was experiencing in acquiring the property it needed for relocation.

A number of courts have faced the problem of when a non-federal entity may be enjoined under NEPA. One case with somewhat similar facts is *Monarch Chemical Works, Inc. v. Exon*, 452 F.Supp. 493 (D.Neb.1978). The city of Omaha had developed a renewal plan which involved relocating residents of East Omaha into housing in other areas. Under the Community Development Act, which allowed delegation of NEPA responsibilities to the city, Omaha prepared the EIS. After the EIS was issued, the state of Nebraska decided to locate a new correctional facility in the area. The state and the city executed an agreement under which the city agreed to acquire the property needed, which included residential and commercial property. Apparently, the city was planning to use the federal funds available to it for the purchase, although the state would eventually reimburse up to a set amount. No EIS was prepared on the correctional facility, resulting in a suit by one of the property owners, Monarch Chemical Works, Inc., for an injunction against city condemnation of the property. Attempting to avoid the EIS problem, a new agreement was drawn up providing that the state, rather than the city, would condemn the property.

In determining whether the state could be enjoined the court first pointed out that:

Compliance with the National Environmental Policy Act does not cease upon preparation of an EIS. The author of an impact statement has an ongoing duty to review its continuing vitality in light of changing conditions. New developments may render the original EIS inadequate, in which case a supplemental impact statement is required. W. RODGERS, HANDBOOK ON ENVIRONMENTAL LAW § 7.7 at 774 (1977).

*Id.* at 500. The court then made the following comments as to when supplemental statements should be issued:

When the entity responsible for the evaluation of a need for an EIS decides that a given action is neither major nor federal, it must set forth the reasoning behind that conclusion. The threshold decision not to file an impact statement is subject to a judicial review of its reasonableness under the circumstances. *Minnesota Public Interest Research Group v. Butz*, 498 F.2d 1314, 1319–20 (8th Cir. 1974); *Patterson v. Exon*, 415 F.Supp. 1276, 1281 (D.Neb.1976).

The same standard of review applies to the decision not to update an impact statement.

*Id.* at 500.[3]

The court had no problem concluding that an injunction against the city was appropriate. It realized, however, that the action would be of little value unless the state could be enjoined also. By its terms, the NEPA EIS requirement applies only to federal agencies (NEPA applied to the city also, since it was assuming federal NEPA responsibilities). 42 U.S.C. § 4332. However,

Power exists in a federal court to enjoin non-federal concerns pending the observance of environmental duties if a "partnership" with the federal government can be shown. *Biderman v. Morton*, 497 F.2d 1141, 1147 (2d Cir. 1974). The presence of federal funds is typically sufficient to establish such a relationship. *Edwards v. First Bank of Dundee*, 534 F.2d 1242, 1245–46 (7th Cir. 1976); *Silva v. Romney*, 473 F.2d 287, 289–90 (1st Cir. 1973); *Lynn*, [*Save the Courthouse v. Lynn*, 408 F.Supp. 1323 (D.C.)] *supra*, 408 F.Supp. at 1344.

*Id.* at 501. The court found a sufficiently close relationship between the city and the state to enjoin the state also. The state was to reimburse the city, and there had been a lengthy, close and consensual relationship between the two governments on the project. Furthermore, the contractual relationship was so dependent on federal dollars that even the amended agreement

---

**3.** The court noted further that "since the City has not taken the required procedural steps under the regulations, no record exists for this Court to review." *Monarch Chemical Works, supra*, at 500–501.

would not remove the obligation to supplement the EIS. *Id* at 501–502.[4]

This Court concludes that the plaintiffs have alleged a sufficient nexus between FHWA, the City, the Interstate Division, and B & O to state a claim against all defendants for violation of NEPA. The Court also concludes that the additional material submitted does not justify granting summary judgment. It is clear from *Monarch, supra,* and other similar cases that the issue is one of fact and must be determined from all of the circumstances. *See Friends of the Earth, Inc. v. Coleman,* 518 F.2d 323, 329 (9th Cir. 1975). The Court does not consider the two documents submitted to be sufficient to grant the defendants' motion.

The defendants distinguish some of the cases by pointing out that the non-federal agency involved was a state agency, not a private company. Similar reasoning has been applied where private parties were involved, however. *Dalsis v. Hills,* 424 F.Supp. 784, 787 (W.D.N.Y.1976). Two other cases cited by the defendants, *San Francisco Tomorrow v. Romney,* 472 F.2d 1021 (9th Cir. 1973), and *U. S. v. Three Tracts of Land,* 377 F.Supp. 631 (N.D.Ala.1974), involve significantly different facts, and are not applicable here.

█ The last claim to be considered is the claim that the hearings violated statutes and regulations. The plaintiffs charge two deficiencies: the failure to hold new hearings on the changed relocation plans, and the failure to hold separate design and corridor hearings. The Federal Highway Act requires that the state hold hearings at which the community may express its views on the proposed highway project: the state must then submit a report indicating that it has considered the "economic, social, environmental, and other effects" of the plan. 23 U.S.C. § 128. Originally, this section only required consideration of economic effects. While the requirements for hearings, and supplemental hearings, under § 128 as amended are not exactly the same as the EIS requirements under NEPA, both statutes are based on similar policies and goals, and the results will often be the same. *See Lathan v. Brinegar,* 506 F.2d 677 (9th Cir. 1974). Accordingly, the Court concludes that the complaint alleges adequate facts to state a claim under § 128.

23 CFR 790.5(a) requires separate public hearings on the corridor and the design in most cases. Plaintiffs allege that a single, combined hearing was held in this case. While defendants argue that the single hearing was allowed here under one of the exceptions, 23 CFR 790.5(g), the pleaded facts do not establish this defense. Nor have any materials been submitted to support summary judgment. Thus, neither motion can be granted on this issue.

For the reasons stated above, all motions of the defendants will be denied. The motion for summary judgment will be denied without prejudice to renewal at a later time, however. The motion for summary judgment was made because two documents were submitted in addition to the pleadings; no discovery had taken place. Neither party will be precluded from moving for summary judgment should discovery make such a motion appropriate.

Accordingly, it is this 7th day of May, 1980, by the United States District Court for the District of Maryland, ORDERED:

1. That all motions to dismiss by the defendants be, and the same are, hereby DENIED;

2. That the motion for summary judgment be, and the same is, hereby DENIED WITHOUT PREJUDICE to renewal after discovery.

4. The court at this point was ruling on a motion for a preliminary injunction. The court later denied permanent relief on the ground that all environment effects required to be covered in an EIS, had in fact been covered; this denial was affirmed. *Monarch Chemical Works, Inc. v. Thone,* 604 F.2d 1083 (8th Cir. 1979).