**DON'T RUIN OUR PARK, et al., Plaintiffs,**

v.

**Michael P.W. STONE, et al., Defendants.**

**No. CV–90–1115.**

United States District Court, M.D. Pennsylvania.

Aug. 31, 1990.

Christobal Bonifaz, Amherst, Mass., for plaintiffs.

Linda Cadden Barrett, Office of Atty. Gen., Harrisburg, Pa., for defendant—Sajer.

## MEMORANDUM

McCLURE, District Judge.

## I. BACKGROUND

This is an action for declaratory and injunctive relief relating to the relocation of the Pennsylvania Army National Guard Aviation Support Facility and Company G, 104th Aviation, from Scranton/Wilkes-Barre International Airport to Mid–State Airport located on state land immediately adjacent to the Black Moshannon State Park.

The plaintiffs in this case are Don't Ruin Our Park, a not for profit association whose membership uses the areas affected by this dispute, the Pennsylvania Federation of Sportsmen's Club, the Pennsylvania Environmental Defense Foundation and the Sierra Club.

The defendants are various federal officials [1] along with Gerald T. Sajer, Adjutant General of the Pennsylvania National Guard.[2]

Plaintiffs claim that defendants failed in their responsibility to carry out the requirements of the National Environmental Policy Act of 1969, specifically 42 U.S.C. § 4332, which requires the preparation of an Environmental Impact Statement ("EIS") for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C).

Currently before the Court is Defendant Sajer's motion to dismiss the complaint against him pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. DISCUSSION

Defendant Sajer claims that as a state official he is not required to comply with the provisions of the National Environmental Policy Act of 1969, which requires only that federal agencies file an EIS whenever they contemplate a major federal action which would significantly affect the quality of the environment. 42 U.S.C. § 4321, *et seq.*

██ The case law reveals, however, that there are two situations in which a non-federal entity may be enjoined along with the federal agency pending completion of an EIS.

The first situation occurs when the non-federal entity enters into a partnership or joint venture with the federal government and becomes the recipient of federal funding. See e.g. *Ivanhoe Irrigation v. McCracken*, 357 U.S. 275, 78 S.Ct. 1174, 2 L.Ed.2d 1313 (1958); *Proetta v. Dent*, 484 F.2d 1146, 1148 (2d Cir.1973); *Silva v. Romney*, 473 F.2d 287, 289–290 (1st Cir.

**1.** Michael P.W. Stone, Secretary of the Army; John B. Conaway, Chief of the National Guard Bureau; William A. Navas, Deputy Director of the Army National Guard.

**2.** Adjutant General is the department head for the Pennsylvania Department of Military Affairs and is appointed by the Governor.

1973); *Greenspon v. Federal Highway Administration*, 488 F.Supp. 1374 (D.Md 1980). "The rationale behind this extension of federal power appears to be grounded in notions of consent." *Biderman v. Morton*, 497 F.2d 1141, 1147 (2d Cir.1974).

> No one forced the State to seek federal funding, to accept federal participation, or to commence construction of a federal aid highway. The State, by entering into this venture, voluntarily submitted itself to federal law. It entered [the agreement] with its eyes open, ...

*Individual Members of San Antonio Conservation Society v. Texas Highway Dept.*, 446 F.2d 1013, 1028 (5th Cir.1971).

The second situation occurs when non-federal action cannot lawfully begin or continue without the prior approval of a federal agency. See e.g. *Greene County Planning Board v. Federal Power Commission*, 455 F.2d 412 (2d Cir.), cert. denied, 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972) (transmission lines could not be strung without Federal Power Commission license); *West Virginia Highlands Conservancy v. Island Creek Coal Co.*, 441 F.2d 232 (4th Cir.1971) (timber cutting and mining activity could not continue without NPS approval). "Indeed, were such non-federal entities to act without the necessary federal approval, they would obviously be acting unlawfully and subject to an injunction." *Biderman v. Morton*, supra, 497 F.2d at 1147.

It now becomes necessary to determine whether Defendant Sajer, as the Adjutant General of the Pennsylvania National Guard, is receiving federal funding on behalf of the National Guard for the move to Mid–State Airport and thus is in a joint venture with the federal government, or whether Sajer is prohibited by law from moving the Pennsylvania Army National Guard Aviation Support Facility to Mid–State Airport without prior federal approval.

The only effective control exercised by the federal government and the regular armed forces relative to organizing, equipping, training and policies of the National Guard of any of the states comes from the control of funds which may be granted to or withheld from the National Guard units pursuant to granting or withdrawing federal recognition. *Lederhouse v. U.S.*, 126 F.Supp 217 (D.C.N.Y.1954), reversed on other grounds 230 F.2d 112 (2d Cir.1956); 32 U.S.C. Section 106.

Therefore, it appears that the case at hand presents an instance of a partnership or joint venture between a federal and non-federal entity. Consequently, Defendant Sajer, as Adjutant General of the Pennsylvania National Guard, the non-federal entity, may be enjoined along with the federal entities in this case pending completion of an EIS, if any injunctive relief is warranted by the evidence.

We therefore enter the following order.

### ORDER

For the reasons stated in the accompanying memorandum, it is Ordered that Defendant Gerald T. Sajer's motion filed July 25, 1990 to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted is denied.