**John D. ROBINSON, Jr., et al., Appellants,**

v.

**John A. KNEBEL, etc., et al., Appellees.**

**No. 76–1459.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1977.

Decided March 2, 1977.

E. W. Brockman, Jr., Brockman, Brockman & Gunti, Pine Bluff, Ark., for appellants.

Robert. A. Kerry, Atty., Dept. of Justice, Washington, D. C., for appellees; Raymond N. Zagone, Washington, D. C., W. H. Dillahunty, U. S. Atty., and Fletcher Jackson, Asst. U. S. Atty., Little Rock, Ark., and Peter R. Taft, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., on brief.

Before MATTHES, Senior Circuit Judge, and BRIGHT and HENLEY, Circuit Judges.

MATTHES, Senior Circuit Judge.

The primary question raised in this appeal is whether an environmental impact statement, filed by the Soil Conservation Service of the United States Department of Agriculture in connection with the Cane Creek Recreational Development Resource Conservation & Development Plan complied with the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 *et seq.* The district court concluded that the final environmental impact statement, as amplified, fully complied with the requirement of NEPA and, accordingly, denied plaintiffs' request for injunctive and declaratory relief and dismissed their action. Plaintiffs appealed. We affirm.

I

*Introduction*

Plaintiffs are residents of Lincoln County, Arkansas and owners of real property located within the proposed Cane Creek Recreational Development. Briefly, plans for the project call for the development of a recreational lake and state park with camping and picnic areas, a boat dock, swimming pool, nature trails, and related facilities. Local sponsors are the Lincoln County, Arkansas Conservation District, the Arkansas Game and Fish Commission, and the Arkansas Department of Parks and Tourism.

The water source for the lake will be Cane Creek, which will be dammed one-eighth of a mile upstream from its confluence with Bayou Bartholomew. The lake, when complete, will be managed for water-based recreation, including sport fishing.

Because of bacterial contamination in the feeder streams to the proposed impoundment, a swimming beach will not be installed until after the water quality is determined safe by actual testing of the filled lake.

Plaintiffs own approximately 350 acres of land which are situated at the extreme eastern edge of the project area. The area to be taken includes approximately 195 acres of cropland cultivated in cotton and soybeans.

On April 25, 1974, plaintiffs filed a complaint [1] in the district court alleging that the final environmental impact statement failed to conform to the requirements of NEPA and seeking to halt further construction of the Cane Creek Recreational Development.

The case proceeded to trial on September 16, 1975. At the conclusion of the second day of trial, the district court granted a continuance to permit defendants to prepare and file an amplification of the final environmental impact statement pursuant to 7 C.F.R. § 650.9(d) (1975). The amplification was filed and trial resumed on April 19, 1976. On April 29, 1976, the district court filed its findings of fact and conclusions of law and a final judgment in favor of defendants.

In this appeal plaintiffs contend that the discussion of alternatives and the cost-benefit analysis are inadequate. Additionally, defendants raise for the first time on appeal the question of standing.

## II

### Standing

■ To establish their standing, plaintiffs must allege first that the challenged administrative action will cause them injury in fact, economic or otherwise, and secondly, that the injury is to an interest arguably within the zone of interests protected by NEPA. See Sierra Club v. Morton, 405 U.S. 727, 733, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); Association of Data Processing Serv. Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). Defendants concede that the allegations of plaintiffs' complaint establish their standing · to sue under NEPA. It is their theory, however, that plaintiffs lack standing to raise the specific question whether the impact statement and amplification were inadequate for failure to fully discuss alternatives to including plaintiffs' tillable land in the project area.

In our view, defendants' contention rests upon an overly narrow reading of the complaints filed in this case. The authorities upon which defendants rely may be distinguished on their facts. In Churchill Truck Lines, Inc. v. United States, 533 F.2d 411 (8th Cir. 1976) a group of common carriers sought to set aside an order of the Interstate Commerce Commission (ICC) granting a competing carrier permission to operate in interstate commerce on the ground that the ICC had not filed an impact statement. The plaintiffs in Churchill had not alleged any environmental injury to themselves. We noted that plaintiffs' sole motivation and interest was their economic well-being vis-a-vis their competitors, an interest which is outside the scope of NEPA. Id. at 416. In Gifford-Hill & Co. v. FTC, 173 U.S.App.D.C. 135, 523 F.2d 730 (1975), also cited by defendants, a cement manufacturer sought to have an FTC complaint charging it with antitrust violations nullified because the decision to prosecute was made without compliance with the procedural requirements of NEPA. The court found that the plaintiff's sole concern was with delaying administrative efforts to enforce antitrust laws and, accordingly, denied standing. Id. at 731–32. Similarly, in Clinton Community Hosp. Corp. v. Southern Md. Med. Ctr., 510 F.2d 1037 (4th Cir. 1975), which involved an action by a private hospital to enjoin construction of a competing hospital on environmental grounds, the court denied standing because it was clear that the sole injury suffered by the plaintiff was to its competitive advantage.

---

1. Separate amended complaints were filed on November 1, 1974 and September 15, 1975.

■ Individuals motivated in part by protection of their own pecuniary interest can challenge administrative action under NEPA provided that their environmental concerns are not so insignificant that they ought to be disregarded altogether. *See National Helium Corp. v. Morton,* 455 F.2d 650, 655 (10th Cir. 1971); *cf. Environmental Defense Fund v. TVA,* 468 F.2d 1164, 1171 (6th Cir. 1972) (landowner in area condemned by TVA found to have standing under NEPA); *Smith v. City of Cookeville,* 381 F.Supp. 100, 102 (M.D.Tenn.1974) (owners of property condemned for use in recreation area found to have standing). Here, plaintiffs alleged that they would be injured not only by the loss of valuable tillable land, but also by the loss of an area used by them to hunt wild game. Additionally, their complaint contained allegations that constant seepage from the proposed lake and increased congestion would have an adverse effect on farming operations in the area. These allegations of injury clearly fall within the zone of interests protected by NEPA.

Moreover, whether plaintiffs can challenge the impact statement on the ground that it does not adequately discuss alternatives to condemnation of their land relates more to the merits of the controversy, which we discuss below, than to plaintiffs' standing.

### III

### *Environmental Impact Statement*

■ Plaintiffs challenge the adequacy of the final EIS and amplification in two major respects. Specifically, they focus on the adequacy of the discussion of alternatives to the proposed action and on the accuracy of the cost-benefit analysis.

#### A. *Alternatives*

Among the procedures prescribed by NEPA, § 102(2)(C) requires the preparation of a detailed statement discussing

    (i) the environmental impact of the proposed action,

    (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

    (iii) alternatives to the proposed action,

    (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

    (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

Section 102(2)(D) directs the agency to "study, develop, and describe appropriate alternatives to recommended courses of action in any proposal . . . ."

Five alternatives are briefly discussed in the final EIS. The amplification contains a detailed description and illustrations of six alternative courses of action, including an analysis of construction costs, drainage problems, and the amount of agricultural land to be saved by each proposal. Plaintiffs charge, nevertheless, that the impact statement and amplification are deficient because the specific alternative of moving the levee to the west of their land and installing a pump to handle seepage was not considered. Defendants' witness testified that plaintiffs' specific proposal was not considered because of generally higher operating costs associated with a pumping station as opposed to a gravity flow system and the danger of introducing pesticides and herbicides into the lake. Defendants' witness further testified that no other project in Arkansas had installed a pumping plant to solve water drainage problems.

■ The duty to develop alternatives under § 102(2)(D) is subject to a rule of reasonableness. *See Environmental Defense Fund, Inc. v. Corps of Engineers,* 470 F.2d 289, 297 (8th Cir. 1972), citing *Natural Resources Defense Council, Inc. v. Morton,* 148 U.S.App.D.C. 5, 458 F.2d 827, 837 (1972). The discussion of alternatives need not be exhaustive if the impact statement presents sufficient information for a reasoned choice of alternatives. *See Iowa Citizens For Environmental Quality, Inc. v. Volpe,* 487 F.2d 849, 852 (8th Cir. 1973); *Natural Resources*

*Defense Council, Inc. v. Morton, supra* at 834; *cf. Sierra Club v. Lynn,* 502 F.2d 43 (5th Cir. 1974). The extent of detail required is necessarily related to the complexity of the environmental problems involved. Here, as in *Iowa Citizens, supra* at 852, the proposed course of action does not adversely affect any "historical, archeological, geological, natural, or recreational features" of special environmental concern. We conclude that the impact statement, when read together with the amplification, adequately discusses the alternatives.

### B. *Cost-Benefit Analysis*

Similar considerations are applicable to the cost-benefit analysis. Plaintiffs have insisted throughout this litigation that the cost-benefit analysis is deficient on four grounds: (i) recreational benefits for swimming are incorrectly claimed because primary contact recreation will be permitted only if water quality tests of the filled lake prove satisfactory;[2] (ii) benefits are incorrectly claimed for land treatment measures some of which are allegedly already being carried out by the Soil Conservation Service and for which some voluntary contributions of money by landowners will be necessary; (iii) the cost-benefit analysis is not updated to reflect inflation and higher interest rates; and (iv) the cost-benefit analysis does not include an accurate calculation of the value of the loss in future crop production and the cost of acquiring plaintiffs' land. An examination of the impact statement demonstrates that each of these assertions lacks substance.

The impact statement contains, *inter alia,* a detailed description of the environmental setting[3] of the proposed project, existing water and land resource problems, favorable and unavoidable adverse environmental effects, a statement of irreversible commitments of resources, and the expected direct and indirect impact upon employ-

ment and the area economy. The loss of productive farm land was found to be offset by favorable effects on the economy produced by the project. Estimated average annual costs and benefits are summarized and expressed in dollar value in an appendix to the impact statement.

■ Section 102(2)(A) requires the use of a "systematic, interdisciplinary approach" to agency decision making. Section 102(2)(B) requires agencies to "identify and develop methods and procedures" to insure that unquantified environmental qualities are "given appropriate consideration in decisionmaking along with economic and technical considerations." These sections do not in all cases require a formal and mathematically precise cost-benefit analysis of proposed agency action. Specific assignment of dollar value to environmental factors, which are frequently not amenable to quantification, may not be necessary if the impact statement otherwise recognizes, discusses, and weighs the favorable and adverse effects of agency action. *See Cady v. Morton,* 527 F.2d 786, 797 (9th Cir. 1975); *Environmental Defense Fund, Inc. v. Corps of Engineers,* 492 F.2d 1123, 1133–34 (5th Cir. 1974); *Sierra Club v. Lynn, supra* at 60–61; *Trout Unlimited v. Morton,* 509 F.2d 1276, 1286 (9th Cir. 1974). While portions of the discussion are couched in conclusory terms that are less than ideal, we cannot say that defendant did not adequately consider and weigh environmental factors in reaching its ultimate decision.

## IV

### *Conclusion*

■ From the record it is obvious that plaintiffs resorted to NEPA for the primary purpose of preventing the appropriation of their lands as a part of the Cane Creek Development project. The initial decision

---

**2.** We note that plans call for the installation of a swimming pool in addition to a swimming beach. Moreover, water quality tests performed in conjunction with the amplification of the impact statement suggest that the water quality of the filled lake will permit swimming.

**3.** The environmental setting section identifies physical, plant, animal, economic, historic, and archeological resources, and also incorporates a statement of soil, water, and plant management status.

to construct and locate projects which may provoke legal action authorized by NEPA is not reposed in the judicial arm of our government. The courts' functions and authority are limited to first determining whether the initiating agency acted within the scope of its authority, and next whether the decision reached was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See Citizens To Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1970); *Environmental Defense Fund v. Corps of Engineers, supra* at 300. Here, the district court, fully recognizing its authority, concluded that the decision of the Secretary of Agriculture was in accordance with the law. The record fully supports this conclusion.

Finding no basis to interfere with the court's judgment, we affirm.