460 F.Supp. 248 (1978)
STATE OF OHIO, ex rel. William J. BROWN, Attorney General of Ohio, Plaintiff,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY et al., Defendants.
William Leslie EVANS et al., Plaintiffs,
v.
Russell E. TRAIN, Administrator, United States Environmental Protection Agency et al., Defendants.
Nos. C-2-76-704, C-2-76-780.
United States District Court, S. D. Ohio, E. D.
March 29, 1978.
*249 David Northrop, Margaret Malone, Asst. Attys. Gen. of Ohio, Columbus, Ohio, for plaintiffs.
*250 James E. Rattan, Asst. U. S. Atty., Columbus, Ohio, for defendants.

OPINION AND ORDER
DUNCAN, District Judge.
The Olentangy Environmental Control Center and Interceptor System (OECC) is a proposed sewage treatment facility to be built in southern Delaware County between State Route 315 and the Olentangy River. Pursuant to the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321, et seq. the defendants caused an Environmental Impact Statement (EIS) to be prepared and circulated for this project. Thereafter, defendant United States Environmental Protection Agency, through its Regional Administrator, approved the OECC project for federal funding.
The plaintiffs in these consolidated cases allege that the EIS fails to comply with the requirements of NEPA and the regulations promulgated thereunder, and that the approval of the OECC for federal funding is arbitrary, capricious and contrary to law. These cases are before the Court for decision after a consolidated hearing on the plaintiffs' motions for preliminary injunction and trial on the merits pursuant to Fed.R.Civ.P. 65(a)(2). The Court's findings of fact and conclusions of law are set forth hereinbelow as required by Fed.R.Civ.P. 52(a).[1]

Scope of Review
The issues before the Court in this case are limited.
Our review of the adequacy of an EIS and of the merits of a decision reflected therein, while careful, has real limits. On the merits, "[t]he review should be limited to determining whether the agency's decision is arbitrary or capricious." Sierra Club v. Froehlke, 486 F.2d 946, 953 (7th Cir. 1973); and see Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).
City of Des Plaines v. Metropolitan Sanitary District of Chicago, 552 F.2d 736, 737 (7th Cir. 1977). With respect to the adequacy of the EIS:
The only role for a court is to insure that the agency has taken a "hard look" at environmental consequences; it cannot "interject itself within the area of discretion of the executive as to the choice of the action to be taken." Natural Resources Defense Council v. Morton, 148 U.S.App.D.C. 5, 458 F.2d 827, 838 (1972).
Kleppe v. Sierra Club, 427 U.S. 390, 410 n. 21, 96 S.Ct. 2718, 2730, 49 L.Ed.2d 576 (1976).
Applying these standards, the Court finds that the plaintiffs have failed to meet their burden of proof and that the defendants are therefore entitled to judgment. The Court's specific findings with respect to the plaintiffs' contentions follow.
1. The EIS depicts the chosen alternative with reasonable accuracy. Page i of the EIS indicates that "[s]ub-alternative six, involving a local treatment plant for the Olentangy and Alum Creek basins, and regionalization of the Scioto flow, has been chosen . . ." Figure 3-17 depicts the proposed project with reasonable accuracy even though it shows construction of interceptor sewers further north along the Scioto River than is actually proposed. The proposed action is further described at pages 4-25 and 4-26 of the EIS.
2. Chapter 5 of the EIS describes the commitment of resources which would be involved in the proposed action if it is implemented together with the trade-offs between short-term and long-term environmental impacts. Although specific data is lacking for some factors (e. g. the amount of energy consumption for construction), the EIS contains sufficient information from which a responsible executive can arrive at a reasonably informed decision regarding the environmental benefits and detriments and the resource commitments *251 necessary to implement the project. See, Sierra Club v. Froehlke, 486 F.2d 946, 950 (7th Cir. 1973). Chapter 5 of the EIS is clearly indicative of a "hard look" at resource commitments and environmental trade-offs.
3. The regulations at 40 C.F.R. § 6.304(b) require that the analysis in the EIS "should be detailed enough to show EPA's comparative evaluation of the .. costs ... of the proposed action and each feasible alternative." Dr. Whitlatch testified, and the Court finds, that the EIS contains inadequate data from which a scientific cost-effectiveness analysis can be performed for each of the alternatives discussed. The Court does not believe, however, that the EIS is required to contain a cost-effectiveness analysis including each alternative; it need only "show EPA's comparative evaluation of the ... costs." The Court finds the cost-effectiveness discussion in the EIS adequate to comply with this requirement. At pages i and 3-58 the EIS indicates that sub-alternative six is not the least cost alternative. The EIS gives cost estimates for some force mains and lift stations which show that alternatives requiring such facilities have a higher capital and operation cost. In the comparison of alternatives the Court finds it unnecessary to prepare precise cost data for each alternative; the comparative cost of certain alternatives can be evaluated without resort to dollar figures.
4. The Court finds the discussion of alternatives in the EIS to be adequate to show a reasoned choice of alternatives. Although the alternative sites were not evaluated on each of the nine criteria identified in the EIS, "[t]he discussion of alternatives need not be exhaustive if the impact statement presents sufficient information for a reasoned choice of alternatives." Robinson v. Knebel, 550 F.2d 422, 425 (8th Cir. 1977). The Court finds that the factors which caused the report preparers to favor one alternative over another are sufficiently identified and considered. Chapters 3 and 4 and Appendix E provide an adequate explanation of the alternatives to form a basis for informed decision-making. While there are those who disagree with the defendant's approval of the site chosen from the available alternatives, the Court finds such decision to be based upon an adequate record, and therefore, not to be arbitrary or capricious. The evidence presented by plaintiffs does not convince the Court that there is any reasonable and feasible alternative to the proposed action which is clearly preferable to the proposed action. Life of the Land v. Brinegar, 485 F.2d 460, 471 (9th Cir. 1973).
The Court does not find the rejection of the alternatives which include connection to the Columbus interceptor sewers to be arbitrary or capricious. Although the plaintiffs presented evidence tending to show that excess sewer capacity may exist in some interceptor sewers within the Columbus system in 1985, there is no evidence of expected excess capacity for the remainder of the 20-year planning period, or for all of the interceptor sewers which would be involved. The evidence also shows that significant questions exist with respect to the reliability of the data available for the Columbus system. The reluctance of the Columbus officials to accept these regional proposals also appears to be an adequate basis for rejection of these alternatives. See, EIS at J-31-33.
5. The EIS reflects that the impact of the OECC on water quality in the Olentangy River was given a "hard look." The evidence adduced by plaintiffs suggests that the computer modelling referred to in the EIS may not accurately predict the effect of the effluent discharge on the Olentangy River. There is little doubt that more accurate stream modelling could have been performed. The EIS, however, reflects many of the inadequacies of the stream modelling and expresses reservations concerning its usefulness in predicting the impact on water quality. The EIS at pages 5-8 further informs the reader that some water quality violations can be expected to occur during critical low flows. Thus, a reasonable report reader is fully apprised of the stream model's shortcomings.
*252 Upon a review of all the evidence, the Court finds that the EIS contains an adequate discussion of water quality impact for informed decision-making. NEPA requires that environmental consequences be given serious consideration; it does not necessarily require that the most accurate stream model be developed. Since the weaknesses of the stream modelling are disclosed, the Court does not find that a reasonable report reader would be misled concerning its reliability or the weight to which the modelling is entitled for planning purposes. The Court finds an adequate record within the EIS independent of the stream modelling data concerning the water quality and characteristics of the Olentangy River and the nature of the effluent to be discharged from which a report reader could conclude that the impact on the water quality of the Olentangy River would be within acceptable limits.
6. The Court finds the discussion in the EIS concerning the impact of the OECC on Highbanks Metropolitan Park to be reasonably accurate and adequate. Even though there may be disagreement on the extent to which the park will be affected, the EIS clearly shows that the sight, noise and odor impacts on Highbanks were given a "hard look." In light of the mitigative measures included in the OECC plans, the Court cannot find the defendants' decision to approve the project to be arbitrary or capricious.
7. At the close of plaintiff's evidence, the Court dismissed Count 11 in Case No. C-2-76-704 and Count 8 in Case No. C-2-76-780 pursuant to Fed.R.Civ.P. 41(b). Both counts allege that the defendants failed to consult with the Advisory Council on Historic Preservation as required by the National Historic Preservation Act, 16 U.S.C. § 470 et seq. The dismissal of these counts was based upon the testimony of Mr. Drennen, an employee of the Ohio Historical Society. Mr. Drennen is responsible for reviewing and nominating sites for the National Register of Historic Places pursuant to direction of Thomas Smith, the State Historic Preservation Officer. From Drennen's testimony it appears that there was consultation with the State Historic Preservation Officer as required by 36 C.F.R. § 800.4(b). As reflected in Mr. Smith's letter of August 30, 1977, (plaintiffs' Exhibit 23), Drennen determined that the OECC will have no effect on historical or archaeological sites listed, nominated to, or eligible for inclusion in the National Register of Historic Places. Thus, the defendants were under no obligation to secure the written comments of the Advisory Council. The plaintiffs presented no evidence from which the Court could conclude that the determination of "no effect" was erroneous.

Conclusion
In summary, the Court finds there to exist a serious problem of inadequate waste water treatment in southern Delaware County. Due to soil conditions and development, the present package plants and on-lot septic systems will not alleviate the existing problems. Thus some type of centralized sewage treatment facility is required.
The final EIS is the culmination of a great deal of planning and study for this project. While the EIS could have been more detailed and searching in its analysis, and more complete and accurate in its data, the Court finds that it contains an adequate base for informed decision-making. The Court further finds that the EIS adequately describes the proposed action, the reasons why the proposed action was chosen, the costs of the proposed action, and the environmental effects of implementing the proposal. Upon balancing practicability and reasonableness against the broad purposes of NEPA, the Court finds the EIS to be in compliance with the Act and regulations. See, Environmental Defense Fund v. Tennessee Valley Authority, 492 F.2d 466, 468 n. 1 (6th Cir. 1974).
In order to comply with the requirement of 42 U.S.C. § 4332(2)(C), that impact statements be circulated for review and comment, the adequacy of the EIS must be determined from its four corners and without incorporation of documents listed in the bibliography which were not circulated. I-291 Why? Association v. Burus, *253 517 F.2d 1077, 1081 (2d Cir. 1975). Other documents considered by the USEPA, but not included in the EIS, may be considered in deciding whether the agency's actions are arbitrary and capricious.[2]See, Life of the Land v. Brinegar, 485 F.2d 460, 468 (9th Cir. 1973).
Upon review of all the evidence, the Court finds that approval of the OECC based upon the EIS is not arbitrary and capricious. Upon review of the EIS within the context of the other evidence, the Court finds that it complies with the requirements of NEPA and the regulations promulgated thereunder.
Plaintiffs have failed to present evidence that the defendants have failed to comply with the National Historic Preservation Act. Accordingly, it is ordered that judgment be entered in favor of all defendants and against all plaintiffs in both actions.
NOTES
[1] Additional facts and conclusions of law are contained in the Court's Opinion and Order in Case No. C-2-76-780, filed January 30, 1978, wherein partial summary judgment was rendered in favor of the defendants.
[2] The evidence shows that numerous supporting documents were available to and considered by the regional administrator and his staff. These documents include the Facilities Plan, 20 Questions, Enviro Control report, and a report on the DELL impact on Highbanks Park prepared by the Battelle Institute. See the EIS bibliography. All such documents were reasonably available to the public. A requirement that all such documents be reproduced in the final EIS would be unreasonable. The Court cannot find the administrator's threshold decisions concerning the scope of the EIS to be arbitrary or unreasonable.