**GEROSA INCORPORATED and Gerosa Crane Service Co., Inc., Plaintiffs,**

v.

**Elizabeth DOLE, as Secretary of the United States Department of Transportation, James S. Gracey, as Commandant of the United States Coast Guard, Wayne E. Caldwell, as Commander of the Third Coast Guard District, John K. Mladinov, as Acting Commissioner of the New York State Department of Transportation, Henry G. Williams, as Commissioner of the New York State Department of Environmental Conservation, and Edward I. Koch, as Mayor of the City of New York, Defendants.**

No. 83 Civ. 1077 (MP).

United States District Court,
S.D. New York.

Dec. 5, 1983.

Kaming & Kaming by Joseph Kaming, New York City, for plaintiffs.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Gerald T. Ford, Lt. William M. Duncan, New York City, for federal defendants.

Robert Abrams, Atty. Gen., State of N.Y. by John G. Proudfit, C. Michael Bryce, Asst. Attys. Gen., New York City, for state defendants.

Frederick A. O. Schwarz, Jr., Corp. Counsel, City of N.Y. by Susan R. Rosenberg, Caryn M. Hirshleifer, New York City, for defendant Koch.

## OPINION

MILTON POLLACK, Senior District Judge.

Plaintiffs Gerosa Incorporated and Gerosa Crane Service Co., Inc. (hereinafter "Gerosa") brought this action for declaratory and injunctive relief to set aside and vacate permits and certifications issued by certain of the defendants in connection with the South Bronx-Oak Point Link Project ("the South Bronx project"). This project calls for construction of a single-track trestle

railroad bridge along the east bank of the Harlem River, in the Bronx, New York. The ultimate relief sought by plaintiffs is an injunction restraining the defendants New York State Department of Transportation ("NYSDOT") and the City of New York ("the City") from proceeding with the South Bronx project.

The federal, state, and city defendants have moved, pursuant to F.R.Civ.P. 12(b)(1), 12(b)(6), 12(c), and 56, for dismissal or judgment adverse to plaintiffs.

*The Parties*

According to their complaint, plaintiffs own and use "approximately five hundred lineal feet of specially constructed heavy duty dock along the Harlem River shoreline." On such property, the plaintiffs jointly operate a heavy duty haulage and crane enterprise. Plaintiffs allege that construction of the proposed South Bronx project will permanently block all navigational access to their dock, and thereby cause severe economic harm to their business.

The federal defendants are the Secretary of Transportation and officials of that department's subunit, the Coast Guard. Pursuant to the General Bridge Act, 33 U.S.C. § 525(b), and the regulations thereunder, 49 C.F.R. § 1.46(c)(7), these defendants are charged with the authority of approving and issuing permits for the construction of bridges over navigable waters of the United States. In addition, the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, governs the conduct of these defendants with respect to its environmental consequences.

The defendant NYSDOT has been the lead state agency with respect to the planning of the South Bronx project, and is charged with the administration and enforcement of various New York laws relating to railroads and transportation. As part of its planning role, NYSDOT assisted the Coast Guard in preparing the NEPA-mandated environmental assessment, draft environmental impact statement ("DEIS"), and final environmental impact statement. *See* 42 U.S.C. § 4332(2)(D) (prescribing

method for federal-state cooperation under NEPA).

Also hailed into federal court by Gerosa is the Commissioner of the New York State Department of Environmental Conservation ("NYSDEC"). According to the complaint, NYSDEC has issued various permits and certifications for the South Bronx project which are required under New York law.

The final defendant named in the complaint is the Mayor of the City of New York. Besides being an apparent beneficiary of the proposed South Bronx project, the City of New York's connection with the project has been relatively minor. According to the complaint, the New York City Planning Commission and the New York City Board of Estimate, acting apparently pursuant to state and city laws, have issued certifications and taken other actions necessary to the planning and progress of the project.

*Facts Underlying the Controversy*

NYSDOT plans shortly to commence construction of the South Bronx project, which calls for the erection of a fixed trestle railroad bridge running a length of 1.7 miles from approximately 162nd Street, Bronx, to the Harlem River Rail Yard at the Southern tip of the Bronx. Funds for the project are to come from New York state.

The South Bronx project is, according to the defendants, the "linchpin" of a "Full Freight Access Program" initiated by NYSDOT in 1975 to improve the efficiency of rail freight services in New York City and Long Island. The Full Freight Access Program is an effort by the state of New York to eliminate two problems that presently exist with respect to freight rail service in the New York City metropolitan area: (1) bridges in the area do not provide sufficient vertical clearance for trailer-on-flatcar trains and many modern boxcars and (2) there is a substantial conflict between rail passenger service and rail freight service. According to the defendants, these problems lead to rerouting of freight trains,

costly delays, and ultimately to a decline in the metropolitan area's economic base.

To make way for construction of the South Bronx project, New York State plans shortly to condemn property owned by Gerosa. Gerosa states that such condemnation will result in the elimination of the only heavy lifting dock facility in the Bronx. In connection with such condemnation, the state of New York, according to the state defendants' brief, intends to pay Gerosa just compensation and in fact has already made an offer as to plaintiff's property.

Because the South Bronx project involves construction of a bridge over navigable waters of the United States, NYSDOT was required to obtain bridge permits from the Coast Guard pursuant to the General Bridge Act and regulations thereunder. Prior to the Coast Guard's issuance of those permits on January 12, 1983, the entire project was subject to an extensive administrative review process.

An early step in this administrative review process was NYSDOT's submission to the Coast Guard on September 23, 1981, of an Environmental Assessment, pursuant to the requirements of NEPA. This document reviewed project alternatives and the expected environmental impacts of the proposed South Bronx project.

After review of the Environmental Assessment, the Coast Guard decided that an environmental impact statement was required pursuant to NEPA,[1] and in January, 1982, the Coast Guard and NYSDOT jointly issued a Draft Environmental Impact Statement (DEIS). The DEIS considered four alternatives for the trestle bridge for the project, including a "no-build" option.

In September, 1982, following public hearings on the impact of the proposed project on navigation and the environment and the preparation of studies concerning noise, water and air pollution, cultural resources, and socio-economic conditions, the Coast Guard and NYSDOT published a Final Environmental Impact Statement (FEIS).

In the FEIS, the Coast Guard and NYSDOT did not agree on the preferred route for the South Bronx project, the former favoring a shore route as the environmentally preferred alternative, the latter favoring an offshore route. This dispute was resolved by an October 20, 1982, letter in which NYSDOT chose the shore route as its alternative, and thus only the shore route was considered in the bridge permit application.

On January 12, 1983, the Commandant of the Coast Guard, after considering the FEIS and the entire administrative record, issued the requisite permits for the project.

*Merits of the Dispute*

A. *NEPA Claims*

The first set of claims in Gerosa's complaint are premised on NEPA and assert that the FEIS on which the Coast Guard relied in issuing permits for the South Bronx project is flawed and inadequate for a wide variety of reasons. In its brief addressing the instant motion, Gerosa explicitly waives several of its allegations under NEPA, obviously in recognition of their lack of merit. At the same time, however, Gerosa's brief advances inexplicably a novel claim not referred to in its complaint, namely that this Court must "enforce" statements in the FEIS which Gerosa reads as providing for the construction of a dock to replace the one which Gerosa will lose when the South Bronx project is constructed.

At the outset, the defendants raise serious questions concerning Gerosa's standing to maintain any action under NEPA in the circumstances of this case. In essence, the defendants argue that the plaintiffs interest in this case is purely economic and has nothing to do with the environmental matters with which NEPA is concerned. More particularly, the defendants assert that Ge-

---

1. Pursuant to 42 U.S.C. § 4332(2)(C), an environmental impact statement is required for every proposal for "major Federal actions significantly affecting the quality of the human environment."

rosa, unsatisfied with what it anticipates will be the result of the New York eminent domain proceedings, wants only a replacement dock for its business and is indifferent to the environmental impacts of the South Bronx project.

■■■ As the most basic element of standing, Article III of the Constitution requires that a plaintiff in federal court show that "he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Valley Forge College v. Americans United For Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The injuries associated with the loss of riverfront property and river access which the Gerosa business will suffer as a result of the South Bronx project clearly meet this "injury in fact" test.

Less clear is whether plaintiffs' NEPA claims meet the additional requirement of standing, based on prudential principles, that the claims fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id.* at 475, 102 S.Ct. at 760 (quoting *Association of Data Processing Service Orgs. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

Guidance as to the zone of interests protected under NEPA is found in *Metropolitan Edison Company v. People Against Nuclear Energy*, —— U.S. ——, 103 S.Ct. 1556, 75 L.Ed.2d 534 (1983). In that case, which held that NEPA did not require the Nuclear Regulatory Commission to consider the psychological health damage which might accompany the restarting of a nuclear power plant, the Supreme Court stated:

> [W]e think the context of the [NEPA] statute shows that Congress was talking about the physical environment—the world around us, so to speak. NEPA was designed to promote human welfare by alerting governmental actors to the

effect of their proposed actions on the physical environment.

*Id.* at ——, 103 S.Ct. at 1560.

The defendants rely on several cases which they assert stand for the proposition that a party whose *sole* motivation in litigating a NEPA claim is *economic* self-interest does not have an interest within the *environmental* purview of the statute and therefore lacks standing. *See Presidio Bridge Co. v. Secretary of State*, 486 F.Supp. 288, 294 (W.D.Tex.1978), *aff'd* 612 F.2d 578 (5th Cir.1980), *cert. denied*, 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980), (NEPA not a device "whereby plaintiffs with strictly economic interests would be allowed to thwart governmental activity under the guise of environmental interest"); *Delaware River Port Authority v. Tiemann*, 403 F.Supp. 1117, 1144 (D.N.J. 1975), *vacated on other grounds*, 531 F.2d 699 (3d Cir.1976), (economic injury "does not fall within the zone of interests which NEPA seeks to protect"); *Hiatt Grain & Feed, Inc. v. Bergland*, 446 F.Supp. 457, 488 (D.Kan.1978), *aff'd*, 602 F.2d 929 (10th Cir.1979), *cert. denied*, 444 U.S. 1073 (1980), 100 S.Ct. 1019, 62 L.Ed.2d 755; *Zlotnick v. District of Columbia Redevelopment Agency*, 2 E.L.R. 20235 (D.D.C. 1972), *aff'd*, 494 F.2d 1157 (D.C.Cir.1974), *cert. denied*, 419 U.S. 963, 95 S.Ct. 223, 42 L.Ed.2d 178 (1974).

Although plaintiffs' primary motivation in pursuing the instant action may be economic—it appears they would drop this action in all respects were they guaranteed a replacement dock facility elsewhere on the Harlem River—the line of cases cited above does not end the Court's analysis of the question of standing.

As the Eighth Circuit stated in *Robinson v. Knebel*, 550 F.2d 422, 425 (8th Cir.1977):

> Individuals motivated in part by protection of their own pecuniary interest can challenge administrative action under NEPA *provided that their environmental concerns are not so insignificant that they ought to be disregarded altogether*.

(emphasis added). *Accord, National Helium Corp. v. Morton,* 455 F.2d 650, 655 (10th Cir.1971).

In the instant case, the threatened economic harm to plaintiffs' business is inextricably linked to a not insignificant harm to the physical environment: it is not disputed that construction of the South Bronx project will eliminate a substantial portion of the scarce physical resource of accessible and navigable shoreline on the Harlem River. The Court finds that the interest of plaintiffs' business in this limited physical resource is within the zone of interests that NEPA was enacted to protect.[2]

The Court finds support for this conclusion in the analogous case of *Mobil Oil Corporation v. Federal Trade Commission,* 430 F.Supp. 855 (S.D.N.Y.1977) (Cannella, J.), *rev'd on other grounds,* 562 F.2d 170 (2nd Cir.1977). In *Mobil Oil,* several major oil companies challenged the FTC's failure to prepare an environmental impact statement in connection with antitrust enforcement actions which the companies claimed would result in unnecessary depletion of the nation's oil resources. *Id.* at 862.

The *Mobil Oil* court held that the oil companies had standing under NEPA:

> The plaintiff oil companies are profit-seeking corporations. Their financial concerns, however, do not at all hinder their standing to raise NEPA issues because they "have alleged an injury in fact, namely, damage to the environment in which they work and upon which they depend for their livelihood and continued maintenance of the quality of their lives. This interest is arguably within the zone of interest sought to be protected by this intentionally broad protective statute."

*Id.* at 864 (quoting *Duke City Lumber Co. v. Butz,* 382 F.Supp. 362, 374 n. 35 (D.D.C. 1974).

On the basis of the foregoing, this Court finds that Gerosa has standing to maintain its claims under NEPA. The Court therefore proceeds to the substance of plaintiffs' NEPA claims.

The convoluted character of plaintiff's brief, which states that plaintiff is not pursuing "the various other" allegations of the complaint which are not discussed in the brief, makes it difficult to determine exactly which NEPA arguments and causes of action plaintiff wishes presently to rely on.

■ The first NEPA claim advanced in the plaintiffs' brief asserts that "the FEIS provision for the construction of a replacement dock requires court enforcement." This claim is wholly without merit, not only because it is raised for the first time on this motion, but also because it misstates both the facts in the administrative record and the law governing judicial review of agency action pursuant to NEPA.

First and foremost, plaintiff's statement that "the FEIS *requires* the construction of a replacement dock" is contradicted by the plain language of that very document. While it is true that the FEIS discusses the possibility of mitigating the adverse effects of the South Bronx project on navigational concerns through the construction of a marginal wharf facility, it is absolutely clear in the FEIS that such construction is merely an option left subject to the further planning of state officials.

The FEIS refers to construction of alternate loading docks as a "potential solution" to the problems that the project will visit upon the Gerosa business. (FEIS at p. 7–4). It states that "a marginal wharf is being considered", and makes clear that "approval would be required from NYSDOT." *Id.* The inchoate nature of the alternative dock proposal is best summarized as follows:

> The Coast Guard believes that the best way to mitigate the impacts to Gerosa is

---

**2.** That the milieu of the South Bronx project is not a pristine wilderness area does not place the physical impacts of the project beyond the purview of NEPA. For the purpose of standing, it is sufficient that the complaint set forth threat-

ened harms to the "physical" environment—"the air, land and water which support life on earth." *Metropolitan Edison, supra,* —— U.S. at ——, 103 S.Ct. at 1560 (quoting 115 Cong.Rec. 40416 (1969) (remarks of Sen. Jackson)).

by providing an alternate facility for them in the marginal wharf. Gerosa's position is that they would like to have an alternate facility provided for them. NYSDOT is negotiating the possible options available with regard to property acquisition and other mitigating measures.

FEIS, p. 13–11.

It is therefore clear that the FEIS neither required nor assumed that any replacement dock or wharf would be provided as part of NYSDOT's mitigation measures in connection with the South Bronx project. Therefore, Gerosa's claim that the Court *enforce* any such requirement is nothing short of absurd.

As a matter of law, moreover, there is no such concept as court "enforcement" of environmental impact statements. As the Second Circuit recently stated,

> the [NEPA] Act mandates no particular substantive outcomes, and courts reviewing agency compliance with NEPA are limited to determining whether "the agency has taken a 'hard look' at the environmental consequences."

*City of New York v. United States Department of Transportation*, 715 F.2d 732 at 747–48, 5701 (2nd Cir.1983) (quoting *Kleppe v. Sierra Club*, 427 U.S. 390, 410 n. 21, 96 S.Ct. 2718, 2730 n. 21, 49 L.Ed.2d 576 (1976)).

For the foregoing reasons, therefore, the Court will countenance no arguments that it must enforce any purported requirements of the FEIS prepared by NYSDOT and the Coast Guard.

■ In addition to seeking "enforcement" of the FEIS, Gerosa raises in its brief two challenges to the adequacy of the FEIS.[3] As can be best discerned from plaintiffs' somewhat convoluted argumentation, these contentions are first, the FEIS fails to analyze the potential for using in alternative projects the state bond monies now earmarked for the South Bronx

project, and second, the FEIS did not address the economic impact of the construction of the South Bronx project without a replacement dock "upon the planned heavy industrial development of the Bronx." As will be set forth below, neither of these challenges has sufficient merit to raise any issue whatsoever concerning the Coast Guard's compliance with the requirement of NEPA in connection with its issuance of permits for the South Bronx project.

Recent case law establishes with clarity the role of a district court in determining whether an agency's environmental review process and documentation has been in accordance with the requirements of NEPA.

"NEPA, while establishing 'significant substantive goals for the Nation,' imposes upon agencies duties that are 'essentially procedural.'" *Strycker's Bay Neighborhood Council v. Karlen*, 444 U.S. 223, 227, 100 S.Ct. 497, 499, 62 L.Ed.2d 433 (*per curiam*) (1980). Once an agency has made a decision subject to NEPA's procedural requirements, "[t]he only role for a court is to insure that the agency has taken a 'hard look' at [the] environmental consequences" of the proposed action." *Kleppe v. Sierra Club*, 427 U.S. 390, 410 n. 21, 96 S.Ct. 2718, 2730 n. 21 (1976). *See also City of New York v. United States Department of Transportation*, 715 F.2d 732 at 747–48 (2nd Cir.1983).

The Second Circuit has described the basic requirements of a NEPA-mandated environmental impact statement (EIS) as follows:

> In order to fulfill its role, the EIS must set forth sufficient information for the general public to make an informed evaluation ... and for the decisionmaker to "consider fully the environmental factors involved and to make a reasoned decision after balancing the risks of harm to the environment against the benefits to be derived from the proposed action."

*Sierra Club v. United States Army Corps of Engineers*, 701 F.2d 1011, 1029 (2nd

---

3. As stated above, Gerosa is "not pursuing the other various ... allegations of the complaint."

Plaintiffs' Brief, p. 31.

Cir.1983) (quoting *County of Suffolk v. Secretary of the Interior*, 562 F.2d 1368, 1375 (2nd Cir.1977)).

The Second Circuit has made clear that the scope of judicial review of an EIS is both narrow and well-defined:

Given the role of the EIS and the narrow scope of permissible judicial review, the court may not rule an EIS inadequate if the agency has made an adequate compilation of relevant information, has analyzed it reasonably, has not ignored pertinent data, and has made disclosures to the public.

*Id.* at 1029.

Gerosa's claim that the FEIS is inadequate because it fails to discuss alternate uses of the state money earmarked for the project is frivolous. The Coast Guard and NYSDOT, during their preparation of the Environmental Assessment, the Draft Environmental Impact Statement, and the FEIS, considered at least six alternative routes for the South Bronx project. In addition, the FEIS considered a "no-build" option and found that one of the benefits of such a course of action would be that "no State funds would be expended; therefore no debt financing would be required." FEIS at p. 6–3.

To demand, as Gerosa asks, that the Coast Guard and NYSDOT have gone further and cluttered the FEIS and related documents with discussions about *other* alternative uses of the project money would serve none of the *environmental* purposes which NEPA seeks to promote. As stated recently by the Supreme Court, "NEPA does not require the agency to assess *every* impact or effect of its proposed action, but only the impact or effect on the environment. *Metropolitan Edison, supra,* —— U.S. at ——, 103 S.Ct. at 1560 (emphasis in original). *See also County of Suffolk, supra,* 562 F.2d at 1375 ("[A]n EIS need not be exhaustive to the point of discussing all possible details bearing on the proposed action.)

Similar considerations convince the Court that Gerosa's contention that the FEIS is inadequate because it does not analyze certain *economic* impacts must also fail. Gerosa appears to argue that NEPA required the Coast Guard and NYSDOT to analyze in detail in the FEIS the future *economic* impact upon industrial development in the Bronx which the project will have if it is built and no replacement dock or wharf is provided.

As a matter of fact, the FEIS at several points discussed in particularity the impact upon area businesses, including Gerosa, of the project's elimination of 1.7 miles of accessible river shore line. Disruption and inconvenience to businesses using and owning property along the shore route was fully examined and considered. FEIS p. 7–10. In addition, the FEIS reviewed official projections that increased waterborne commerce had not been anticipated for the Harlem River, and stated that

[t]here are other locations throughout the City to accomodate further expansion of warterborne commerce should a resurgence occur. Along the existing 17 miles of industrial warterfront, within the Bronx, the capacity for expanded waterfront usage greatly exceeds projected growth by the year 2000. If the Shore Route were constructed, it would limit to some degree the waterfront access along the 1.7 miles of Harlem River waterfront. This would represent an impact to approximately 10 percent of the existing industrial shoreline in the borough and approximately two percent of the existing industrial shoreline of New York City. The two businesses presently using the waterfront (Gerosa Crane and Industrial Scrap Processors) will likely be accomodated under the Shore Route. Other businesses could use the air rights over the tracks.

In summary, construction of the Shore Route would limit future waterborne commerce (either due to inconvenience or economic considerations) along 1.7 miles of the east side of the Harlem River. But because space exists elsewhere in the Bronx and in New York City, the potential for future expansion of this mode of transporting bulk materials will

not be prohibitively constrained (either in the Bronx or in New York City) by the construction of the rail line.

FEIS p. 7–13 to 7–14.

*See also* FEIS pp. 5–18 to 5–23 (examining in detail present levels of water commerce on the Harlem River); FEIS pp. 7–14 to 7–17 (discussing impact of project on thirteen specific business entities, including Gerosa).

While recognizing the adverse economic impacts of the South Bronx project, the FEIS concludes that its overall economic benefits will in fact "contribute to [the] economic recovery" of the Bronx. FEIS p. 7–11. And as indicated previously, *none* of the economic analysis or conclusions of the FEIS were premised on any assumption that a replacement wharf or dock would definitely be provided to any businesses in the area.

The FEIS' treatment of the economic impacts of the South Bronx project goes well beyond the requirements of NEPA. In the wake of the Supreme Court's decision in *Metropolitan Edison, supra,* which limited the impacts with which an agency must be concerned under NEPA to those which will occur in the physical environment, and in light of other case law holding that judicial review of the economic aspects of an EIS should be especially deferential, this Court finds that plaintiff has raised no issues as to the adequacy of the FEIS with respect to its analysis of the economic impacts of the South Bronx project. *See South Louisiana Environmental Council, Inc. v. Sand,* 629 F.2d 1005, 1011 (5th Cir.1980); *Gloucester County Concerned Citizens v. Goldschmidt,* 533 F.Supp. 1222, 1231 (D.N. J.1982).

As stated by the court in *Sand,*

[d]etermination of economic benefits and costs that are tangential to environmental consequences are within [the] wide area of agency discretion. NEPA, then, permits, at most, a narrowly focused, indirect review of economic assumptions

underlying a federal project described in an impact statement.

629 F.2d at 1011.

In conclusion, the Court holds that the plaintiffs have failed to identify any environmental concerns not discussed in the FEIS and have also failed to show that it is inadequate in any respect or lacks good faith.

B. *General Bridge Act Claim*

■ Plaintiffs also argue that the bridge permits issued by the Coast Guard pursuant to the General Bridge Act, 33 U.S.C. § 525, should be voided because the decision to issue them was arbitrary, capricious, and contrary to law. The bases for this assertion are essentially identical to plaintiffs' arguments, rejected above, that the Coast Guard failed to comply with NEPA, namely:

[t]he Coast Guard ... failed to identify and effectuate reasonable alternatives and mitigation to reduce and prevent the adverse environmental impact which results from the elimination of navigational access to the project's shoreline and the elimination of the heavy duty and medium duty wharfage which serves the Bronx and related areas.

Complaint, ¶ 71.

Pursuant to the General Bridge Act, the location and plans for bridges over the navigable waters of the United States, such as that called for in the South Bronx project plans,

shall be approved by the Chief of Engineers and the Secretary of Transportation before construction is commenced, and, in approving the location and plans of any bridge, they may impose any specific conditions relating to the maintenance and operation of the structure *which they may deem necessary in the interest of public navigation,* and the conditions so imposed shall have the force of law.

33 U.S.C. § 525(b) (emphasis added).[4]

The federal defendants argue at the threshold that, except for NEPA claims,

---

4. Pursuant to 49 C.F.R. § 1.46(c)(7), the authori-

ty to make permit decisions under the General

there is no avenue for judicial review of Coast Guard permit decisions made pursuant to the General Bridge Act, and that even if such avenue exists, Gerosa lacks standing to utilize it. In light of its ultimate decision that the Coast Guard did not act arbitrarily, capriciously, or contrary to law in any respect raised by plaintiffs, this Court will render no holding with respect to these troublesome threshold issues. It is worth noting, however, that several courts have engaged in judicial review of . bridge permit decisions under the Administrative Procedure Act, 5 U.S.C. § 706, and that there are no cases which hold that such review is improper. *See Port of Jacksonville Maritime Ad Hoc Committee, Inc. v. Hayes*, 485 F.Supp. 741 (M.D.Fla. 1980), *aff'd*, 620 F.2d 567 (5th Cir.1980); *Citizens for Mass Transit, Inc. v. Adams*, 492 F.Supp. 304 (E.D.La.1980), *aff'd* 630 F.2d 309 (5th Cir.1980); *State of Delaware v. Bender*, 402 F.Supp. 1066 (D.Del.1975).

The Coast Guard's decision to issue the permits clearly survives the scrutiny of the "arbitrary, capricious, or contrary to law" standard which courts have previously applied in reviewing such decisions. Under that standard,

> [t]he court must consider whether the decision was based on a consideration of the relevant factors and whether there has been *clear error* of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The Court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) (emphasis added).

It is clear from the administrative record that the Coast Guard carefully considered and weighed the effect of the South Bronx project upon the navigational interests represented by plaintiffs—namely, the accessibility of the Harlem River shoreline, including the special Gerosa facility, to river traffic—but decided that sufficient river shoreline existed elsewhere in the immediate

area to handle anticipated waterborne commerce and that therefore conditioning of the permits on the provision of a replacement wharf facility was unnecessary. *See, e.g.*, FEIS at pp. 7–13 to 7–14. The Court finds that the plaintiff has failed to demonstrate anything resembling "clear error" in this decision.

*Summary Judgment is Appropriate Here.*

■ It is well established under the relevant case law that summary judgment, under the circumstances of this case, is the appropriate mechanism for disposing of both the General Bridge Act and NEPA claims raised by Gerosa, and that no evidentiary hearing is necessary.

First, with respect to its review of the permit issuance under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), the Court is limited to reviewing the administrative record which was before the agency. *E.g. Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). Indeed, it would be improper for the Court to conduct *de novo* proceedings in reviewing the Coast Guard's permit decisions. As stated in *Citizens for Mass Transit, Inc. v. Adams*, 492 F.Supp. 304 (E.D.La.1980), a case upholding a Coast Guard decision to issue bridge permits,

> A reviewing court is not to supplant the agency on the administrative aspects of the litigation. Rather, the judicial function is fundamentally—and exclusively—an inquiry into the legality and reasonableness of the agency's action, matters to be determined solely on the basis upon which the action was administratively projected.

*Id.* at 309 (quoting *Doraiswamy v. Secretary of Labor*, 555 F.2d 832 (D.C.Cir. 1976)).

Second, with respect to Gerosa's NEPA claim, while an evidentiary hearing is sometimes necessary to a determination of the adequacy of an environmental impact statement, *see, e.g., Sierra Club v. United States Army Corps of Engineers*, 701 F.2d

Bridge Act has been delegated to the Coast · Guard.

1011 (2nd Cir.1983), Gerosa has come forward with no basis for requiring a hearing in the instant case.

Rule 56(e) of the Federal Rules of Civil Procedure provides that:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

As stated by the Advisory Committee, The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.

Advisory Committee Note, Proposed Amendments to Rules of Civil Procedure for the United States District Courts, 31 F.R.D. 648–49 (1962).

Judge Friendly, in *Beal v. Lindsay*, 468 F.2d 287, 291 (2nd Cir.1972), made clear that

[w]hen the movant comes forward with facts showing that his adversary's case is baseless, the opponent cannot rest on the allegations of the complaint but must adduce factual material which raises a substantial question of the veracity or completeness of the movant's showing or presents countervailing facts.

*See also Perma Research & Development Co. v. The Singer Company*, 410 F.2d 572, 578 (2nd Cir.1969) ("summary judgment cannot be defeated by the vague hope that something may turn up at trial").

Plaintiffs have advanced no specific facts showing that there is a genuine issue for trial on its claims of federal law, and therefore no evidentiary hearing is warranted.

### C. *Remaining Claims*

■ This Court having resolved all of plaintiffs' federal law claims in favor of the defendants, the only unresolved claims which are still in contention in this case arise under various laws of New York State. In accord with *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Court believes it best to leave plaintiff's state claims to the tribunals of New York to adjudicate. *See, e.g., Girard v. 94th Street and Fifth Avenue Corp.*, 530 F.2d 66, 72 (2nd Cir.1976), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976) (dismissing state claim to "avoid making '[n]eedless decisions of state law'"); *Wigginess Inc. v. Fruchtman*, 482 F.Supp. 681 (S.D.N.Y.1979), *aff'd* 628 F.2d 1346 (2nd Cir.1980), *cert. denied*, 449 U.S. 842, 101 S.Ct. 122, 66 L.Ed.2d 50 (1980).

Therefore, plaintiffs' claims arising under state laws are dismissed without prejudice to their further adjudication in state court.

### Conclusion

Summary judgment in favor of the defendants is granted with respect to plaintiffs' causes of action under NEPA and the General Bridge Act. The remaining claims still advanced by plaintiffs are matters of state law, and as such are dismissed without prejudice.

The action is dismissed and judgment is to be entered in favor of the defendants against the plaintiff, with costs.